540 So.2d 619 (1988)
Bernard Douglas DANLEY
v.
STATE of Mississippi.
No. 58161.
Supreme Court of Mississippi.
December 28, 1988.
As Modified on Denial of Rehearing March 8, 1989.
Darryl A. Hurt, Hurt & Hurt, Lucedale, for appellant.
Mike Moore, Atty. Gen. by Harrison S. Ford, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc:
PRATHER, Justice, for the Court:
This appeal addresses the issue of enforceability of plea bargain agreements. The appellant, Bernard Douglas Danley, was tried in the Circuit Court of George County for the murder of William Platt. The jury found him guilty of murder as charged and sentenced him to life imprisonment. He appeals to this Court and assigns as error the following:
(1) The trial court erred in overruling the appellant's motion to dismiss the indictment and in permitting the State to offer testimony, over the appellant's objection, despite the memorandum of understanding (immunity agreement), which granted the appellant immunity from prosecution on the charge of murder.
(2) The trial court erred in permitting the State, over the appellant's objection, to introduce into evidence a Buck knife which had been purchased by a member of the district attorney's staff and which the State openly admitted in front of the jury was not the murder weapon and was not the property of the appellant.
(3) The trial court erred in overruling the appellant's motion for a mistrial when the jury had deliberated from 5:00 p.m. until 11:15 p.m.
(4) The trial court erred in overruling the appellant's motion for a mistrial on the ground that the court's remarks to the jury constituted a "dynamite instruction" or "Allen instruction".

I.
The appellant was tried and convicted for the murder of William Platt (also known as "Fuzzy" or "Buddy"), who was stabbed to death on the evening of December 4, 1985. The appellant and William Platt were co-workers at the International Paper Company in Moss Point, Mississippi. According to Danley, he and Platt first became acquainted when Platt approached him about the idea of selling marijuana. Danley agreed to this plan and began selling marijuana on Platt's behalf.
*620 On the evening of December 4, 1985, a meeting had been arranged between Danley and Platt, the purpose of which was for Danley to pay Platt $1,000 for a pound of marijuana. Danley arrived at the site of the meeting, on Latonia Road, between the City of Lucedale and the Alabama State Line, at approximately 9:00 p.m. Plat and a man named Marlo Reid were waiting for Danley in Platt's blue van.
At this point in the story, the facts become more disputed. Danley got into the van with the two men and a conversation ensued. Danley maintains that Platt and Reid exited the van and began having a heated discussion in front of the van, with the van's headlights shining on them. Danley claims that Reid stabbed Platt in the chest with a knife. At that point Danley claims he ran back to his car and left the area quickly.
Not surprisingly, Reid tells an entirely different story. He maintains that Danley and Platt exited the van, jumped into Danley's car and drove further into the distance, presumably to complete the drug transaction which inspired this tragic set of circumstances. After a few minutes had elapsed, Reid heard Platt yell. Reid became fearful of what was occurring and ran off into the woods. Danley returned to the van, looked inside, climbed into the vehicle and drove it into the woods. Danley then left the area, and Reid hitchhiked back to Alabama.
Regardless of which version of this story is to be believed, Danley did go back to the van early the next morning and discovered William Platt's body inside. Danley drove the van to the Shipman Community and buried Platt's body under the front porch of a house he had rented previously.
After burying the body, Danley called a high school friend, Bruce Tisdale, and asked him for some help in "disposing" of something. Danley drove over to Tisdale's house to find Tisdale waiting there with another high school friend of the two men named Timothy Tolbert. Danley told the two men that he needed to get rid of a van. The three men parked the van in the woods, and drove back to Tisdale's house in Danley's car. At approximately the same time, the sheriff's office of George County received a telephone call from William Platt's family, stating that he had been missing since the trip he had made to George County on December 4. The sheriff's department was informed that Platt had been scheduled to meet with Bernard Danley on the evening of December 4. They were also given a general description of the blue van.
Around December 12 or 13, the sheriff's department received a call that two men with a torch were attempting to dismantle a blue van in an old county gravel pit. A deputy sheriff was dispatched to the scene, and he arrested Bruce Tisdale and Timothy Tolbert, the two men who were dismantling the van. Both Tisdale and Tolbert were charged as accessories to murder after the fact and with grand larceny.
Danley was eventually arrested and tried for the murder of William Platt. Tisdale and Tolbert testified at trial that they noticed the presence of blood on the carpet in the van, and also noticed that Danley had sand and blood on his pants the day after the murder occurred. Both men also testified at trial that Danley had admitted killing Platt, saying "It was either me or him". Danley also admitted at trial that he had taken three pounds of marijuana from the van, a fact which was corroborated by Tisdale.

II.

DID THE TRIAL COURT ERR IN OVERRULING THE APPELLANT'S MOTION TO DISMISS THE INDICTMENT AND PERMITTING THE STATE TO OFFER TESTIMONY, OVER THE APPELLANT'S OBJECTION, DESPITE THE MEMORANDUM OF UNDERSTANDING (IMMUNITY AGREEMENT), WHICH GRANTED THE APPELLANT IMMUNITY FROM PROSECUTION ON THE CHARGE OF MURDER?
The memorandum of understanding referred to in this assignment of error is a document entered into by the district attorney and the appellant, Bernard Danley. The memorandum of understanding was *621 dated January 4, 1986, and was signed by the appellant, the district attorney and the appellant's attorneys of record. Under the provisions of this agreement Danley was to direct law enforcement officials to the body of William Platt and assist them in any way possible in locating the person or persons who murdered Platt. In exchange for the appellant's full and truthful cooperation, the State of Mississippi and the District Attorney were to recommend to the trial court that Danley be tried as an accessory after the fact of murder and as a conspirator to distribute a controlled substance, in this case marijuana. Upon the entry of the appellant's guilty plea, the State of Mississippi promised to recommend a sentence of five years on the accessory to murder after the fact charge and five to ten years on the charge of conspiracy to distribute a controlled substance, with the sentences to run concurrently. The State of Mississippi also promised to recommend that Danley serve his sentence in a Department of Corrections work center near Lucedale or in a county jail near Lucedale.
In this agreement, Danley promised "to testify fully and truthfully before any tribunal regarding any involvement he or others had in this incident or acts related and to cooperate fully and truthfully in whatever efforts the district attorney request [sic] in obtaining corroboration of his testimony." The agreement also contained the following crucial provision:
It shall be further understood by all parties herein that if at any time the cooperation of Bernard Douglas Danley is not deemed to be full and truthful by the district attorney, or evidence is presented or uncovered, whether or [sic] testimonial or physical, that Danley's cooperation is false, misleading, or less than fully cooperative, this agreement is terminated as if it never existed and the State of Mississippi retains all power of prosecution and can and will use any information provided by Bernard Douglas Danley for whatever purpose he [sic] deems appropriate.
After this agreement had been entered into and after further conversations with Danley, the district attorney felt that Danley had lied about certain details of the evening of December 4, 1985. As a consequence, the district attorney decided that the agreement should be terminated, and the decision was made to prosecute Danley for William Platt's murder. Danley now challenges this decision by the district attorney as a violation of the terms of the memorandum of understanding. He claims that the district attorney never intended to keep the promises made in the memorandum of understanding and that the only reason the agreement was ever made was to enable law enforcement officials to find the body of William Platt.
It is undisputed from the record that Danley did lead law enforcement officials to Platt's body underneath the house where he had buried him. Additionally, at no point before, during or after the trial did Danley ever deny being on the scene of the murder on the evening of December 4, nor did he ever deny burying the body; however, he did deny having anything to do with the actual murder of William Platt.
The reason given by the district attorney for refusing to honor the memorandum of understanding was that Danley had lied to him about certain key information, specifically whether or not Danley had taken anything from Platt's van. The district attorney maintains that in his conversations with Danley on January 4, just prior to the signing of the memorandum of understanding, Danley made no mention of having taken anything from Platt's van. In an interview conducted the next day, January 5, and at trial, Danley admitted that he had taken three pounds of marijuana from Platt's van.
Based on these revelations, the district attorney decided that the deal reached under the memorandum of understanding was no longer binding on the State. The district attorney determined that, since the subject of the meeting on December 4 was a drug transaction and that Danley had lied about a key element of the transaction, which could possibly provide a motive for murder, it was his belief that he had every *622 right to rescind the memorandum of understanding. It is true that the actual language of the memorandum gave the district attorney the right to rescind the agreement at any point if the appellant was untruthful. The crucial point under this assignment of error for our purposes however, is whether the district attorney had unilateral authority to make this decision.
The memorandum of understanding is a plea bargain, although a rather unorthodox one. The United States Supreme Court has held that the process of plea bargaining is to be encouraged if properly administered. "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432-433 (1971). Santobello also stressed the requirement of fairness in plea negotiations. "When a plea bargain is made and a guilty plea entered thereon, the promises of the prosecutor are part of the inducement of the plea ..." Gamble v. State, 604 P.2d 335, 337 (Nev. 1979).
Therefore, the prosecution is held to "the most meticulous standards of both promise and performance," Correale v. United States, 479 F.2d 944, 947 (1st. Cir.1973), in an effort to ensure that the defendant's rights are scrupulously honored. It is the opinion of this Court that the prosecution failed to so honor the defendant's rights in this case.
Section 99-15-53 of Miss. Code Ann. (1972) reads as follows:
A district attorney shall not compromise any cause or enter a nolle prosequi, either before or after indictment found, without the consent of the court; and, except as provided in the last preceding section, it shall not be lawful for any court to dismiss a criminal prosecution at the cost of the defendant, but every cause must be tried, unless dismissed by consent of the court. (Emphasis added).
There is no indication in the record that the district attorney ever sought the approval of the trial court before reaching the plea bargain agreement with Danley.
The more serious error in this case however, was the unilateral decision by the district attorney to rescind the memorandum of understanding.
On the merits, our view is that in a plea bargain the Government's obligation to make a recommendation arises only if the defendant performs his obligation (in this instance, full disclosure), but the question whether defendant did in fact fail to perform the condition precedent is an issue not to be finally determined unilaterally by the Government, but only on the basis of adequate evidence by the court which, in accordance with Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), judicially approved the bargain as meeting governing standards. There would be manifest impropriety in permitting the Government, without satisfying a judge that the evidence proves that a defendant broke his promise, to escape from the obligation the Government undertook in the plea bargain. U.S. v. Simmons, 537 F.2d 1260, 1261-1262 (4th. Cir.1976). (Emphasis added).
This view has been followed or cited with approval in numerous state and federal jurisdictions. Kresler v. State, 462 So.2d 785, 788 (Ala.Cr.App. 1984); State v. Warren, 124 Ariz. 396, 401, 604 P.2d 660, 665 (App. 1979); People v. Cole, 195 Colo. 483, 584 P.2d 71, 75 (1978); In re Tinney, 518 A.2d 1009, 1013 (D.C.App. 1986); Brown v. State, 607 S.W.2d 801, 804 (Mo. App. 1980); Gamble v. State, 95 Nev. 904, 604 P.2d 335, 337 (1979); Commonwealth v. Ohle, 291 Pa.Super. 110, 435 A.2d 592, 599 (1981), cert. denied, 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894; Matter of James, 96 Wash.2d 847, 640 P.2d 18, 20 (1982); Myers v. Frazier, 319 S.E.2d 782, 796-797 (W. Va. 1984); State v. Rivest, 106 Wis.2d 406, 316 N.W.2d 395, 398 (1982); U.S. v. Gonzalez-Sanchez, 825 F.2d 572, 578 (1st. Cir.1987); U.S. v. Swinehart, 614 F.2d 853, 858 (3rd. Cir.1980); U.S. v. Reckmeyer, 786 F.2d 1216, 1224 (4th. Cir.1986); U.S. v. Donahey, 529 F.2d 831, 832 (5th. Cir.1976); U.S. v. Verrusio, 803 F.2d 885, 888 (7th. Cir.1986); *623 U.S. v. Arnett, 628 F.2d 1162, 1164 (9th. Cir.1979); U.S. v. Reardon, 787 F.2d 512, 516 (10th. Cir.1986). It is the opinion of this Court that this rule is in accord with the jurisprudence of this state and should be officially adopted in our jurisdiction as well.
In the case sub judice, the decision to rescind the memorandum of understanding was made solely by the district attorney, and there is no evidence in the record of any sort of evidentiary hearing ever taking place. Santobello, supra, and decisions by this Court have emphasized the importance of upholding plea bargain agreements when the defendant has relied on them to his detriment. In Edwards v. State, 465 So.2d 1085, 1086 (Miss. 1985) we held:
In light of Edwards' detrimental reliance on the agreement, we are compelled to hold that the circuit court abused its discretion in not quashing the indictment and thereby forcing the state to comply with its obligation under the agreement.
See also, Salter v. State, 387 So.2d 81, 83-84 (Miss. 1980).
The same elements of detrimental reliance by the appellant are present here. To allow the prosecution to renege on its promise after the appellant had complied with his part of the "bargain," would be inherently unjust. Therefore on remand, the state must be required to honor the terms of the agreement. This assignment of error as presented by the appellant is valid, and requires reversal of the murder conviction and remand to the trial court for further disposition.

III.
It is not necessary to address the other assignments of error, as they are rendered moot by the holding of this Court under the first assignment. Therefore, they need not be considered.

IV.
For the foregoing reasons, it is the opinion of this Court that the decision of the trial court should be reversed and remanded, with the appellant allowed to reenter a guilty plea, pursuant to the terms of the memorandum of understanding.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
PITTMAN and BLASS, JJ., not participating.