## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 91-KA-00282-SCT

*JOHN E. BELL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/90 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CYNTHIA ANN STEWART |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 8/15/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/5/96 |

**EN BANC.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

### INTRODUCTION

¶1. On March 20, 1990, a specially called Grand Jury indicted John E. Bell for racketeering under Miss. Code Ann. § 97-43-5(3) (1972). Bell was convicted by a jury, sentenced to four years in the custody of MDOC, and fined $15,000. Bell raises the following issues for review by this Court:

**I. WHETHER THE OFFICE OF THE ATTORNEY GENERAL HAD LEGAL AUTHORITY TO EMPANEL AND SPECIALLY CALL THE GRAND JURY AND TO PRESENT ANY CHARGES TO THIS SPECIALLY CALLED GRAND JURY WITHOUT THE REQUEST FOR AID AND ASSISTANCE BY THE LOCAL DISTRICT ATTORNEY OR AT THE DIRECTION OF THE GOVERNOR OF THE STATE OF MISSISSIPPI?**

**II. WHETHER THE TRIAL COURT ERRED IN ITS RULING ON THE MEMORANDUM OF UNDERSTANDING BETWEEN BELL AND THE ATTORNEY GENERAL, RESULTING IN THE PREJUDICIAL ADMISSION OF IRRELEVANT**

**OTHER CONDUCT, IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS AND ARTICLE 3, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION?**

**III. WHETHER THE TRIAL COURT ERRED IN NOT HOLDING JOHN BELL IMMUNE FROM PROSECUTION PURSUANT TO § 99-17-27, MISSISSIPPI CODE ANNOTATED, IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND ARTICLE 3, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION?**

**IV. WHETHER THE TRIAL COURT ERRED IN DENYING BELL INFORMATION ABOUT AND FROM THE GRAND JURY THAT INDICTED HIM IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS AND ARTICLE 3, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION?**

**V. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE STATE TO INTRODUCE TESTIMONY IT FAILED TO TIMELY PRODUCE IN DISCOVERY, PREJUDICING BELL AND DENYING HIM THE RIGHT TO DUE PROCESS, A FAIR TRIAL AND EFFECTIVE ASSISTANCE OF COUNSEL?**

**VI. WHETHER THE TRIAL COURT ERRED IN NOT DECLARING A MISTRIAL DUE TO A CONFLICT BETWEEN DEFENSE ATTORNEYS AND JOHN BELL?**

**VII. WHETHER THE TRIAL JUDGE ERRED IN NOT RECUSING HIMSELF FROM HEARING THE POST-TRIAL MOTIONS FILED IN THE CASE?**

**VIII. WHETHER THE TRIAL COURT ERRED IN FAILING TO ENSURE THAT ALL MATTERS AND PROCEEDINGS WERE TRANSCRIBED?**

**IX. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTIONS DIRECTING THE JURY TO FIND JOHN BELL GUILTY?**

¶2. This Court will address the first two issues. The other issues are without merit and/or are procedurally barred.

## STATEMENT OF THE FACTS

¶3. Prior to October 1988, John E. Bell, through Bell Music Company, owned and managed the proceeds of several video poker machines throughout the Vicksburg area. On October 8, 1988, Investigator Bill East with the Attorney General's office went to the Battlefield Truck Plaza owned by Bell, bought quarters from one of Bell's employees, and was subsequently paid for the credits he had earned while playing video poker on one of Bell's machines. Based on Investigator East's experience, the authorities raided the Truck Plaza on October 10, 1988.

¶4. On November 22, 1988, Bell entered into identical service and maintenance agreements and promissory notes with the Elks Lodge and American Legion. These contracts provided that Bell would receive 5% of the gross proceeds towards the purchase of the video poker machines and 25% of the gross weekly proceeds towards the service and maintenance on the machines.

¶5. Thereafter, in February 1989, Bell and the Attorney General's office reached an agreement entitled "Memorandum of Understanding" ("Memo"). The Attorney General's office agreed not to prosecute Bell if he ceased his involvement with gambling operations in compliance with the spirit and letter of the Memo agreement. The Attorney General was not aware of the poker machine service and maintenance agreements that Bell had entered into with the Elks Lodge and the American Legion.

¶6. When the Attorney General became aware of these contracts, he asserted that the Memo agreement had been violated and requested that the Circuit Judge reconvene the Grand Jury of Warren County to consider indictments against Bell, which indictments were returned. Other relevant facts are discussed as they apply to the issues.

### I. WHETHER THE OFFICE OF THE ATTORNEY GENERAL HAD THE LEGAL AUTHORITY TO EMPANEL AND SPECIALLY CALL THE GRAND JURY AND TO PRESENT ANY CHARGES TO THIS SPECIALLY CALLED GRAND JURY WITHOUT THE REQUEST FOR AID AND ASSISTANCE BY THE LOCAL DISTRICT ATTORNEY OR AT THE DIRECTION OF THE GOVERNOR OF THE STATE OF MISSISSIPPI?

¶7. The record reflects that the Attorney General requested in writing that the trial judge recall the grand jury. Thereafter, the trial judge recalled the grand jury which indicted Bell. Bell filed a pre-trial motion to dismiss the indictment, and asserted that the Attorney General did not have the authority to empanel a grand jury. The trial judge denied this motion.

¶8. Bell's argument on this point fails because the trial judge recalled the grand jury -- not the Attorney General. A similar argument was raised in *Oates v. State*, 421 So. 2d 1025 (Miss. 1984). In *Oates*, the defendant argued that, because the District Attorney had recalled the grand jury, the indictment in that case was improperly handed down. This Court held that the grand jury was "duly recalled by court order." *Oates* 421 So. 2d at 1028. The court further stated that (even though the District Attorney had selected the days that the grand jury would actually meet) the district attorney "was not recalling the grand jury." *Id.*

*¶9.* Therefore, even though the Attorney General requested that the trial judge recall the grand jury, the Attorney General did not actually recall the grand jury. Rather, the grand jury that indicted Bell was duly impaneled by the trial judge. Furthermore, the Attorney General is "a constitutional officer possessed of all the power and authority inherited from the common law as well as that specially conferred upon him by statute. This includes the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the state, preservation of order and the protection of public rights." *Gandy v. Reserve Life Ins. Co.*, 279 So. 2d 648, 649 (Miss. 1973). Therefore, the Attorney General did not act improperly when he requested that the trial judge recall the grand jury in this case. Such action was necessary to "institute" a criminal prosecution against Bell. For these reasons, Bell's contention on this point is without merit.

### II. WHETHER THE TRIAL COURT ERRED IN ITS RULING ON THE MEMORANDUM OF UNDERSTANDING BETWEEN BELL AND THE ATTORNEY GENERAL, RESULTING IN THE PREJUDICIAL ADMISSION OF IRRELEVANT

**OTHER CONDUCT, IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS AND ARTICLE 3, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION?**

¶10. Bell was indicted based on allegations that he engaged in a pattern of racketeering activity encompassing an approximate span of time from October 10, 1987, until March 30, 1990. In March 1988, Bell and the State entered into a Memorandum of Understanding ("Memo") wherein Bell agree to immediately cease and desist operation of any gambling activities within the State of Mississippi, including the placement for rent or lease or any control of video draw poker machines. In return the State agreed not to prosecute Bell as long as he complied with both the letter and spirit of the agreement.

¶11. Importantly, the Memo stated, "It is currently the understanding of this office that Mr. Bell has discontinued these gambling operations in Warren County." The State claims that at the time of the signing of the agreement, they were unaware that Bell had contracted with the Elks Lodge and the American Legion Post for the sale and service of video poker machines. Subsequently, when the State became aware of these contracts, the criminal prosecution of Bell was initiated and an indictment was returned in March 1990.

¶12. Among Bell's pre-trial motions was a "Motion to Quash the Indictment Because The Prosecution Is In Violation of an Immunity Memorandum Agreement Wherein The State Agreed Not to Prosecute The Defendant." An extensive hearing was held on this motion, after which, the trial judge denied the motion to quash. He declined, however, to make a finding of fact on the question of whether or not Bell had violated the terms of the Memo, and held that this was a factual issue, to be decided by the jury. The trial judge reasoned that to rule on this question would be a decision regarding the ultimate issue of Bell's guilt. Bell then moved for a bifurcated trial, and requested that the question of whether he had violated the Memo be decided by a separate trial. The court denied this motion, and held that the question should be submitted to the jury through instructions. [1] On appeal, Bell argues that the trial judge erred in denying the motion to quash the indictment.

¶13. Interpretation of the Memo agreement in this case is a question of contract law. "Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder." ***Mississippi State Highway Commission v. Patterson Enterprises Ltd.***, 627 So. 2d 261, 263 (Miss. 1993). Therefore, the trial judge should have determined whether Bell violated the agreement, in order to determine whether the prosecution of Bell was properly before his court.

¶14. This Court remands for a hearing and determination from the trial judge as to whether Bell violated the Memo agreement, in order to determine whether the indictment was proper. Should the trial judge rule that Bell's actions violated the memo agreement, then a new trial would be in order -- such trial to be conducted in accordance with the applicable rules of evidence. Otherwise, if the trial judge finds that Bell's actions did not violate the Memo agreement, then the trial court should entertain a motion to quash the indictment. [2]

## CONCLUSION

¶15. This case is reversed and remanded for the trial judge, after evidentiary hearing, to determine

whether Bell violated the terms of the Memo agreement. The other issues raised by Bell on this appeal are without merit.

¶16. **REVERSED AND REMANDED.**

**PITTMAN, BANKS, ROBERTS AND SMITH, JJ., CONCUR. LEE, C.J., AND MILLS, J., CONCUR IN RESULT ONLY. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

**McRAE, JUSTICE, DISSENTING:**

¶17. The majority fails to realize the significance of *Danley v. State*, 540 So. 2d 619, 622 (Miss. 1989), in its decision to remand this case to the trial court for a determination of whether Bell violated the memorandum of understanding. As a matter of public policy, and in recognition of the limitations on the office of the attorney general, *Danley* requires *prior* court approval of the attorney general's compromise of a case or his decision to rescind a memorandum of understanding or plea bargain. How can the trial court on remand possibly give *prior* court approval of the Attorney General's agreement with Bell in 1989 or the Attorney General's unilateral decision to rescind the agreement in 1990?

¶18. The majority has implicitly overruled the *Danley* case and ignored Miss. Code Ann. § 99-15-53 (1972), in its decision to remand this case for further proceedings. Pursuant to *Danley,* this case should be reversed and Bell discharged due to the Attorney General's failure to obtain prior court approval of the compromise of Bell's prosecution and subsequent withdrawal of the agreement. Not only did the Attorney General exceed his powers of office in negotiating with Bell, but he also lacked the authority to call the Warren County Grand Jury for the purpose of indicting Bell. Therefore, even if the trial court had the authority under our law to again review the agreement with Bell, the indictment was still defective.

¶19. The majority attempts to ignore *Danley* on the basis that Bell failed to raise the issue addressed in that case. To the contrary, Bell's brief under Issue D expressly provided as follows:

> This agreement was probably not legal. Section 99-15-53, Mississippi Code Annotated, as amended, provides that "a District Attorney shall not compromise any cause or enter a nolle prosequi, either before or after indictment, without the consent of the court . . ." No consent was obtained prior to the immunity agreement between the Attorney General's office and John Bell. . . . The trial court here also expressed strong disapproval of the failure to obtain court approval for the agreement. (R. 121)

Appellant's Brief, p. 34-35. The *Danley* case is a direct interpretation of Miss. Code Ann. § 99-15-53 which, as indicated above, was expressly cited by Bell as grounds for the court below and this Court to find there was no violation of the agreement. *See Danley*, 540 So. 2d at 622 (expressly relying on Miss. Code Ann. § 99-15-53 to find agreement with defendant invalid where Attorney General failed

to obtain prior court approval of memorandum of understanding). The trial judge even alluded to the rule of *Danley* in his decision in the court below. Consequently, it was properly raised as an issue by Bell.[(3)]

¶20. Despite the claimed procedural bar, the majority also somehow vaguely attempts to distinguish *Danley* on the basis of detrimental reliance*.* The existence of detrimental reliance, however, is irrelevant to a claim that the agreement was void without prior court approval. Detrimental reliance is only relevant to the subsequent withdrawal of the plea bargain. Even so, there was sufficient evidence in the record revealing that Bell detrimentally relied upon the agreement by substantially altering his conduct after signing the memorandum of understanding. The majority's attempts to ignore *Danley* are not persuasive

¶21. The record in this case reveals there was no court participation in the signing of the memorandum of understanding between Bell and the attorney general, or in the decision of the attorney general's office to pursue prosecution of Bell. Miss. Code Ann. § 99-15-53 (1972) provides as follows:

> A district attorney, or other prosecuting attorney, shall not compromise any cause or enter a nolle prosequi either before or after indictment found, **without the consent of the court**;

(emphasis added).

¶22. In *Danley v. State*, 540 So. 2d 619, 622 (Miss. 1989), this Court held that a district attorney cannot unilaterally enter into and later conclude that a plea bargain agreement has been violated. [(4)] This Court reasoned that any agreement or memorandum of understanding with a defendant is, in effect, a plea bargain which is therefore subject to prior court approval under § 99-15-53. *Danley*, 540 So. 2d at 622.

¶23. The defendant in *Danley* failed to lead law enforcement officials to the body of the victim as agreed with the district attorney in a memorandum of understanding. *Id.* at 620-21. As in the case *sub judice*, there was no indication in the *Danley* record that the agreement was ever approved by the trial court at the time it was made. *Id.* at 622. The district attorney, asserting that Danley had lied about a key element of the transaction, decided unilaterally to rescind the memorandum of understanding. *Id.* at 621-22. The Court found error in both the failure to obtain prior court approval of the agreement and its unilateral recision, although it was noted that the district attorney's unilateral decision to rescind the agreement was the more egregious error, tantamount to allowing the government to escape from an obligation it had undertaken when entering the agreement. *Id*. (quoting *U.S. v. Simmons*, 537 F.2d 1260, 1261-62 (4th Cir. 1976)).

¶24. Based on *Danley*, the agreement set forth in the Memorandum of Understanding between Bell and the State in this case was void as against public policy and in violation of Miss. Code Ann. § 99-15-53. It essentially involved an agreement by the prosecuting attorney not to indict an individual for an alleged felony which might be construed as a crime in and of itself. The only way a prosecutor is permitted to propose such an agreement is through prior court approval. *Danley*, 540 So. 2d at 622.

¶25. The State suggests that we construe the Memo as something wholly different than a plea bargain agreement so that *Danley* would not apply. The Memo, although signed before Bell was indicted, is

still subject to the dictates of *Danley* and, therefore, requires court approval when it is made, as well as before any recision of the agreement. To hold otherwise would allow the attorney general's office and local district attorneys to subvert the checks and balances we so adamantly championed in *Danley*.[(5)] The Attorney General should not play the combined role of judge, jury and executioner. There can be no remand of this case for reconsideration of the "agreement" where, pursuant to *Danley*, the "agreement" was void as a matter of law for lack of prior court consent. The indictment should be dismissed and Bell discharged.

¶26. The indictment against Bell was likewise defective because the Attorney General did not possess the power to convene the Warren County Grand Jury. The majority is not the slightest bit persuasive in its discussion of this issue. The facts of *Oates v. State*, 421 So. 2d 1025 (Miss. 1984), are clearly distinguishable from the facts of this case as evidenced by the majority's own discussion. The district attorney in *Oates* merely selected the days that the grand jury would be empaneled after it was initially called by the court. *Id.* at 1028. In the case at hand, the grand jury was initially called at the command of the Attorney General. It makes no difference that a court order was used to fulfill the Attorney General's demand that the grand jury be called. The fact remains that the Attorney General was the individual who called for the grand jury.

¶27. The Attorney General is empowered by statutory and common law authority.[(6)] In *Gandy v. Reserve Life*, 279 So. 2d 648 (Miss. 1973), this Court stated that the "Attorney General is a Constitutional officer possessed of all the power and authority inherited from the common law **as well as** that **specially conferred** upon him by statute. This includes the **right to institute**, conduct and maintain all suits necessary for the enforcement of the laws of the state, preservation of order and the protection of public rights." *Id*. at 649 (emphasis added). We should not infringe upon the Attorney General's common law powers; however, we should not be inclined to broaden them either. The right of the Attorney General to institute proceedings for the enforcement of laws does not include a right to specially call a grand jury session.

¶28. Additionally, there exists no statutory authority allowing the Attorney General to specially call a grand jury session under the facts of the case *sub judice*. His office can participate and enter into the grand jury room only at the request of the Governor of Mississippi or to aid and assist the local district attorney.[(8)] Miss. Code Ann. § 7-5-53 and § 7-5-54 define the extent of the Attorney General's authority. Miss. Code Ann. § 7-5-53 (1972) provides that the Attorney General shall assist district attorneys as follows:

> The Attorney General shall, when required by the public service or when directed by the Governor, in writing, . . . assist the district attorney there in the discharge of his duties and in any prosecution against a state officer, and shall have the same right as the district attorney to enter the grand jury room **while the grand jury is in session** and to perform such services with reference to the work of the grand jury as the district attorney is authorized by law to perform.

(emphasis added).

¶29. Miss. Code Ann. § 7-5-54 (1972), which provides for prosecution of official corruption and other white collar crimes, reads in pertinent part:

> **When requested by a district attorney and in the public interest**, the Attorney General

may, in person or by his designated staff, assist the district attorney in the discharge of his duties. The Attorney General . . . shall have the same right as the district attorney to enter the grand jury room **while the grand jury is in session** and to perform such services with reference to the work of the grand jury as the district attorney is authorized to perform.

(emphasis added).

¶30. The facts of this case demonstrate that the Attorney General neither was acting in the public interest as defined by case law nor at the behest of the Governor[9] or at the request of the local district attorney.[10] In fact, it was stipulated by the Attorney General's office that the calling of the grand jury was at the instance of the Attorney General, that the subpoenaing of all the witnesses was at the instance of the Attorney General, and that the district attorney took no part in the calling of the grand jury or the presentation of any evidence. Amazingly, this stipulation is entirely ignored by the majority. Furthermore, even if the Governor or local district attorney had requested intervention, we are still unable to find any statutory authority which grants him the power to specially call a grand jury session.[11] The statutes specifically set forth that the Attorney General may enter the grand jury while it is in session and assist the district attorney in the discharge of his duties. The statutes do not provide that the Attorney General may have a grand jury empaneled. If the legislature had intended for the Attorney General to be empowered to call a special grand jury, it would have so stated. To interpret these statutes otherwise would be contradictory to their legislative intent and impermissibly broaden the powers of the Attorney General. Consequently, Bell correctly asserts that the Attorney General indeed did not have the authority to command the circuit court to empanel a grand jury in this case, and accordingly, the indictment handed down against him is void.

¶31. Our system of government calls for checks and balances on each of its various branches and agencies. The Attorney General's Office is no different. The Attorney General position is entrusted with protection of the statewide public interests of Mississippi, as opposed to the local interests of each community. The local district attorneys are responsible for protecting the local interests of their individual communities. This is the reason the Attorney General is not permitted to become intimately involved in local interests such as the one presented by the case at hand. Just as the Attorney General is a constitutionally created position, so is the position of the local district attorneys. Mississippi Constitution of 1890, art. VI, §§ 173-74. This Court may not under our Constitution permit the Attorney General to usurp the powers of another constitutionally created office. Since our Constitution of 1890, the Attorney General historically has not been given the statutory or common law power to empanel a grand jury. Such is the reason this Court should find the indictment in this case was entirely improper. *See **Kennington-SaengerTheatres v State**,* 18 So. 2d 483, 487 (Miss. 1944).

¶32. Not only has the majority completely misinterpreted both issues it actually decided to address, what about the remaining issues raised by Bell?[12] What if the lower court approves of the Attorney General's unilateral decision to rescind its agreement without prior court approval? The remaining issues raised by Bell then become relevant to the disposition of his appeal, yet the majority fails to address them. Can Bell appeal these same issues to this Court again? Will there be a double jeopardy violation if Bell is tried again years later when or if this appeal is ultimately disposed of in a meaningful way by the majority? The majority has only scratched the surface of this appeal if it chooses, as it has apparently done, to ignore the mandates of ***Danley*** and our Constitution regarding

the powers of the attorney general. For these reasons, I cannot join the majority's superficial treatment of the issues raised by Bell in this case. Accordingly, I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. Instruction D-26 reads "The Court instructs the jury that unless you find from the evidence beyond a reasonable doubt that John E. Bell did violate the agreement not to prosecute, entered into by John E. Bell and the State of Mississippi, then you must find John E. Bell not guilty."

2. It is noteworthy that the parties do not raise the question addressed in *Danley v. State*, 540 So. 2d 619 (Miss. 1989). In *Danley*, the defendant gave up a valuable right in reliance on an agreement -- only to have the State subsequently renege. *Danley*, 540 So. 2d at 622. The importance of this element of detrimental reliance was again recognized in *Singleton v. State*, 618 So. 2d 1290 (Miss. 1993). In *Singleton*, this Court held that "[a]bsent a guilty plea or some other detrimental reliance by defendant, the prosecutor was under no legal inhibition to revoke his agreement." *Singleton*, 618 so. 2d at 1291. The parties in the case *sub judice*, do not raise the issue; furthermore, there was no evidence of any kind that Bell relied on the agreement to his detriment. Rather, the question raised by the parties is whether the agreement was broken by the defendant. For these reasons, this Court does not address the issue raised in *Danley*, 540 So. 2d at 622.

3. The author of the *Danley* opinion is also the author of this opinion. Since the issue of prior court approval of the plea bargain was properly raised on appeal, the author has apparently firmly retreated from her position in *Danley*.

4. The Attorney General should have full knowledge of the requirements established in *Danley* and § 99-15-53 since he was the prosecuting attorney in the appeal of that case as well as the District Attorney who formed the initial agreement.

5. "[T]his Court [has] emphasized the importance of upholding plea bargain agreements when the defendant has relied on them to his detriment. . . . To allow the prosecution to renege on its promise after the appellant had complied with his part of the 'bargain,' would be inherently unjust." *Danley*, 540 So. 2d at 623.

6. The Attorney General is a constitutional officer whose office is established by Miss. Const. art. VI, § 173 under the judiciary branch of our government.[(7)]

7. The Attorney General is a constitutional officer whose office is established by Miss. Const. Art. 6 § 173.

8. We take judicial notice that the Attorney General unsuccessfully has sought to obtain additional authority from the legislature.

9. A request by the Governor that the Attorney General assist the district attorney in the performance

of his duties must be in writing. ***Bush v. State***, 585 So. 2d 1262, 1264 (Miss. 1991).

10. During oral arguments, the State assured the Court that there had been correspondence between the Attorney General's Office and the local district attorney in which the district attorney pledged to assist the Attorney General should the Attorney General need his assistance. However, the alleged letter is not in the record. Moreover, such a letter would not be dispositive of the matter since it was not the district attorney who requested assistance.

11. Pursuant to the State Grand Jury Act, Miss. Code Ann. § 13-7-1 (1993) et seq., the Attorney General has limited powers involving grand juries in drug and narcotics cases. § 13-7-7(2) provides as follows:

> Whenever the Attorney General considers it necessary, and normal investigative or prosecutorial procedures are not adequate, the Attorney General may petition in writing to the senior court judge of any circuit court district in this case for an order impaneling a state grand jury.

The fact that an amendment to § 26 of the Mississippi Constitution was necessary to give the Attorney General authority to seek in writing an order to call a grand jury for drug related cases is, in and of itself, indicative that no such authority existed at the time Bell was indicted. Furthermore, the limited authority granted extends only to drug-related matters.

12. Bell also assigned as error the trial court's failure to declare a mistrial; its refusal to hold him immune from prosecution pursuant to Miss. Code Ann. § 99-17-27; its denial of information from and about the grand jury that indicted him; its ruling allowing the State to introduce testimony not timely produced in discovery; its failure to insure that all proceedings were transcribed; its failure to grant certain jury instructions, and finally, the circuit court's refusal to recuse itself from hearing post-trial motions filed in the case. Because the issues discussed in this opinion are dispositive, we decline to address the other issues raised.