McRAE, Justice,
dissenting:
The majority fails to realize the significance of Danley v. State, 540 So.2d 619, 622 (Miss.1988), in its decision to remand this case to the trial court for a determination of whether Bell violated the memorandum of understanding. As a matter of public policy, and in recognition of the limitations on the office of the attorney general, Danley requires prior court approval of the attorney general’s compromise of a case or his decision to rescind a memorandum of understanding or plea bargain. How can the trial court on remand possibly give prior court approval of the Attorney General’s agreement with Bell in 1989 or the Attorney General’s unilateral decision to rescind the agreement in 1990?
The majority has implicitly overruled the Danley ease and ignored Miss.Code Ann. § 99-15-53 (1972), in its decision to remand this case for further proceedings. Pursuant to Danley, this case should be reversed and Bell discharged due to the Attorney General’s failure to obtain prior court approval of the compromise of Bell’s prosecution and subsequent withdrawal of the agreement. Not only did the Attorney General exceed his powers of office in negotiating with Bell, but he also lacked the authority to call the Warren County Grand Jury for the purpose of indicting Bell. Therefore, even if the trial court had the authority under our law to again review the agreement with Bell, the indictment was still defective.
The majority attempts to ignore Danley on the basis that Bell failed to raise the issue addressed in that case. To the contrary, Bell’s brief under Issue D expressly provided as follows:
This agreement was probably not legal. Section 99-15-53, Mississippi Code Annotated, as amended, provides that “a District Attorney shall not compromise any cause or enter a nolle prosequi, either before or after indictment, without the consent of the court ...” No consent was obtained prior to the immunity agreement between the Attorney General’s office and John Bell.... The trial court here also expressed strong disapproval of the failure to obtain court approval for the agreement. (R. 121)
Appellant’s Brief, p. 34-35. The Danley case is a direct interpretation of Miss.Code Ann. § 99-15-53 which, as indicated above, was expressly cited by Bell as grounds for the court below and this Court to find there was no violation of the agreement. See Danley, 540 So.2d at 622 (expressly relying on Miss. Code Ann. § 99-15-53 to find agreement with defendant invalid where Attorney General failed to obtain prior court approval of memorandum of understanding). The trial judge even alluded to the rule of Danley in his decision in the court below. Consequently, it was properly raised as an issue by Bell.[1]
Despite the claimed procedural bar, the majority also somehow vaguely attempts to distinguish Danley on the basis of detrimental reliance. The existence of detrimental reliance, however, is irrelevant to a claim that the agreement was void without prior court approval. Detrimental reliance is only relevant to the subsequent withdrawal of the plea bargain. Even so, there was sufficient evidence in the record revealing that Bell *999 detrimentally relied upon the agreement by substantially altering his conduct after signing the memorandum of understanding. The majority’s attempts to ignore Danley are not persuasive.
The record in this case reveals there was no court participation in the signing of the memorandum of understanding between Bell and the attorney general, or in the decision of the attorney general’s office to pursue prosecution of Bell. Miss.Code Ann. § 99 — 15— 53 (1972) provides as follows:
A district attorney, or other prosecuting attorney, shall not compromise any cause or enter a nolle prosequi either before or after indictment found, without the consent of the court;
(emphasis added).
In Danley v. State, 540 So.2d 619, 622 (Miss.1988), this Court held that a district attorney cannot unilaterally enter into and later conclude that a plea bargain agreement has been violated.[2] This Court reasoned that any agreement or memorandum of understanding with a defendant is, in effect, a plea bargain which is therefore subject to prior court approval under § 99-15-53. Danley, 540 So.2d at 622.
The defendant in Danley failed to lead law enforcement officials to the body of the victim as agreed with the district attorney in a memorandum of understanding. Id. at 620-21. As in the ease sub judice, there was no indication in the Danley record that the agreement was ever approved by the trial court at the time it was made. Id. at 622. The district attorney, asserting that Danley had lied about a key element of the transaction, decided unilaterally to rescind the memorandum of understanding. Id. at 621-22. The Court found error in both the failure to obtain prior court approval of the agreement and its unilateral recision, although it was noted that the district attorney’s unilateral decision to rescind the agreement was the more egregious error, tantamount to allowing the government to escape from an obligation it had undertaken when entering the agreement. Id. (quoting U.S. v. Simmons, 537 F.2d 1260,1261-62 (4th Cir.1976)).
Based on Danley, the agreement set forth in the Memorandum of Understanding between Bell and the State in this case was void as against public policy and in violation of Miss.Code Ann. § 99-15-53. It essentially involved an agreement by the prosecuting attorney not to indict an individual for an alleged felony which might be construed as a crime in and of itself. The only way a prosecutor is permitted to propose such an agreement is through prior court approval. Dan-ley, 540 So.2d at 622.
The State suggests that we construe the Memo as something wholly different than a plea bargain agreement so that Danley would not apply. The Memo, although signed before Bell was indicted, is still subject to the dictates of Danley and, therefore, requires court approval when it is made, as well as before any recision of the agreement. To hold otherwise would allow the attorney general’s office and local district attorneys to subvert the checks and balances we so adamantly championed in Danley.[3] The Attorney General should not play the combined role of judge, jury and executioner. There can be no remand of this case for reconsideration of the “agreement” where, pursuant to Danley, the “agreement” was void as a matter of law for lack of prior court consent. The indictment should be dismissed and Bell discharged.
The indictment against Bell was likewise defective because the Attorney General did not possess the power to convene the Warren County Grand Jury. The majority is not the slightest bit persuasive in its discussion of this issue. The facts of Oates v. State, 421 So.2d 1025 (Miss.1982), are clearly distinguishable from the facts of this case as evi *1000 denced by the majority’s own discussion. The district attorney in Oates merely selected the days that the grand jury would be empaneled after it was initially called by the court. Id. at 1028. In the case at hand, the grand jury was initially called at the command of the Attorney General. It makes no difference that a court order was used to fulfill the Attorney General’s demand that the grand jury be called. The fact remains that the Attorney General was the individual who called for the grand jury.
The Attorney General is empowered by statutory and common law authority.[4] In Gandy v. Reserve Life, 279 So.2d 648 (Miss.1973), this Court stated that the “Attorney General is a Constitutional officer possessed of all the power and authority inherited from the common law as well as that specially conferred upon him by statute. This includes the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the state, preservation of order and the protection of public rights.” Id. at 649 (emphasis added). We should not infringe upon the Attorney General’s common law powers; however, we should not be inclined to broaden them either. The right of the Attorney General to institute proceedings for the enforcement of laws does not include a right to specially call a grand jury session.
Additionally, there exists no statutory authority allowing the Attorney General to specially call a grand jury session under the facts of the case sub judice. His office can participate and enter into the grand jury room only at the request of the Governor of Mississippi or to aid and assist the local district attorney.[5] Miss.Code Ann. § 7-5-53 and § 7-5-54 define the extent of the Attorney General’s authority. Miss.Code Ann. § 7-5-53 (1972) provides that the Attorney General shall assist district attorneys as follows:
The Attorney General shall, when required by the public service or when directed by the Governor, in writing, ... assist the district attorney there in the discharge of his duties and in any prosecution against a state officer, and shall have the same right as the district attorney to enter the grand jury room while the grand jury is in session and to perform such services with reference to the work of the grand jury as the district attorney is authorized by law to perform.
(emphasis added).
Miss.Code Ann. § 7-5-54 (1972), which provides for prosecution of official corruption and other white collar crimes, reads in pertinent part:
When requested by a district attorney and in the public interest, the Attorney General may, in person or by his designated staff, assist the district attorney in the discharge of his duties. The Attorney General ... shall have the same right as the district attorney to enter the grand jury room while the grand jury is in session and to perform such services with reference to the work of the grand jury as the district attorney is authorized to perform.
(emphasis added).
The facts of this case demonstrate that the Attorney General neither was acting in the public interest as defined by case law nor at the behest of the Governor[6] or at the request of the local district attorney.[7] In fact, it was stipulated by the Attorney General’s office that the calling of the grand jury was *1001 at the instance of the Attorney General, that the subpoenaing of all the witnesses was at the instance of the Attorney General, and that the district attorney took no part in the calling of the grand jury or the presentation of any evidence. Amazingly, this stipulation is entirely ignored by the majority. Furthermore, even if the Governor or local district attorney had requested intervention, we are still unable to find any statutory authority which grants him the power to specially call a grand jury session.[8] The statutes specifically set forth that the Attorney General may enter the grand jury while it is in session and assist the district attorney in the discharge of his duties. The statutes do not provide that the Attorney General may have a grand jury empaneled. If the legislature had intended for the Attorney General to be empowered to call a special grand jury, it would have so stated. To interpret these statutes otherwise would be contradictory to their legislative intent and impermissibly broaden the powers of the Attorney General. Consequently, Bell correctly asserts that the Attorney General indeed did not have the authority to command the circuit court to empanel a grand jury in this case, and accordingly, the indictment handed down against him is void.
Our system of government calls for checks and balances on each of its various branches and agencies. The Attorney General’s Office is no different. The Attorney General position is entrusted with protection of the statewide public interests of Mississippi, as opposed to the local interests of each community. The local district attorneys are responsible for protecting the local interests of their individual communities. This is the reason the Attorney General is not permitted to become intimately involved in local interests such as the one presented by the case at hand. Just as the Attorney General is a constitutionally created position, so is the position of the local district attorneys. Mississippi Constitution of 1890, art. VI, §§ 173-74. This Court may not under our Constitution permit the Attorney General to usurp the powers of another constitutionally created office. Since our Constitution of 1890, the Attorney General historically has not been given the statutory or common law power to empanel a grand jury. Such is the reason this Court should find the indictment in this ease was entirely improper. See Kennington-Saenger Theatres v. State, 196 Miss. 841, 18 So .2d 483, 487 (1944).
Not only has the majority completely misinterpreted both issues it actually decided to address, what about the remaining issues raised by Bell?[9] What if the lower court approves of the Attorney General’s unilateral decision to rescind its agreement without prior court approval? The remaining issues raised by Bell then become relevant to the disposition of his appeal, yet the majority fails to address them. Can Bell appeal these same issues to this Court again? Will there be a double jeopardy violation if Bell is tried again years later when or if this appeal is ultimately disposed of in a meaningful way by the majority? The majority has only scratched the surface of this appeal if it chooses, as it has apparently done, to ignore the mandates of Danley and our Constitution regarding the powers of the attorney gener *1002 al. For these reasons, I cannot join the majority’s superficial treatment of the issues raised by Bell in this case. Accordingly, I dissent.
SULLIVAN, P.J., joins this opinion.

. The author of the Danley opinion is also the author of this opinion. Since the issue of prior court approval of the plea bargain was properly raised on appeal, the author has apparently firmly retreated from her position in Danley.

. The Attorney General should have full knowledge of the requirements established in Danley and § 99-15-53 since he was the prosecuting attorney in the appeal of that case as well as the District Attorney who formed the initial agreement.

. “[T]his Court [has] emphasized the importance of upholding plea bargain agreements when the defendant has relied on them to his detriment. ... To allow the prosecution to renege on its promise after the appellant had complied with his part of the 'bargain,' would be inherently unjust.” Danley, 540 So.2d at 623.

. The Attorney General is a constitutional officer whose office is established by Miss. Const, art. VI, § 173 under the judiciary branch of our government.

. We take judicial notice that the Attorney General unsuccessfully has sought to obtain additional authority from the legislature.

. A request by the Governor that the Attorney General assist the district attorney in the performance of his duties must be in writing. Bush v. State, 585 So.2d 1262, 1264 (Miss.1991).

.During oral arguments, the State assured the Court that there had been correspondence between the Attorney General's Office and the local district attorney in which the district attorney pledged to assist the Attorney General should the Attorney General need his assistance. However, the alleged letter is not in the record. Moreover, such a letter would not be dispositive of the matter since it was not the district attorney who requested assistance.

. Pursuant to the State Grand Jury Act, Miss. Code Ann. § 13-7-1 (1993) et seq., the Attorney General has limited powers involving grand juries in drug and narcotics cases. § 13-7-7(2) provides as follows:
Whenever the Attorney General considers it necessary, and normal investigative or prose-cutorial procedures are not adequate, the Attorney General may petition in writing to the senior court judge of any circuit court district in this case for an order impaneling a state grand jury.
The fact that an amendment to § 26 of the Mississippi Constitution was necessary to give the Attorney General authority to seek in writing an order to call a grand jury for drug related cases is, in and of itself, indicative that no such authority existed at the time Bell was indicted. Furthermore, the limited authority granted extends only to drug-related matters.

. Bell also assigned as error the trial court's failure to declare a mistrial; its refusal to hold him immune from prosecution pursuant to Miss. Code Ann. § 99-17-27; its denial of information from and about the grand jury that indicted him; its ruling allowing the State to introduce testimony not timely produced in discovery; its failure to insure'that all proceedings were transcribed; its failure to grant certain jury instructions, and finally, the circuit court's refusal to recuse itself from hearing post-trial motions hied in the case. Because the issues discussed in this opinion are dispositive. We decline to address the other issues raised.