**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Virgil SHACKLETT,**
**Defendant–Appellant.**

No. 90–4350.

United States Court of Appeals,
Fifth Circuit.

Jan. 9, 1991.

John H. Hannah, Jr., Tyler, Tex. (Court-appointed), for defendant-appellant.

Tonda Curry, Asst. U.S. Atty., Bob Wortham, U.S. Atty., Tyler, Tex., for plaintiff-appellee.

Before GARWOOD and WIENER, Circuit Judges, and VELA *, District Judge.

PER CURIAM:

Defendant, Virgil Shacklett (Shacklett), appeals his conviction for conspiring to manufacture and possess amphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, to which he had pleaded guilty, on grounds that the district court failed to comply with Fed.R.Crim.P. 11. Shacklett also appeals the district court's finding that the government knew, before entering into the plea agreement, that sixty-six pounds of amphetamine were attributable to Shacklett. Finding that the district court failed to address a core concern of Rule 11 and that it erred by basing Shacklett's sentence on unreliable information about the quantity of amphetamine, we reverse the conviction, vacate the sentence, and remand to the district court with the instruction to permit Shacklett to plead anew.

I.

Shacklett entered into a plea agreement with the government in which he agreed to plead guilty to one count of conspiring to manufacture and to possess with intent to distribute nine (9) pounds of amphetamine. At the plea hearing, the district court admonished Shacklett as to his waiver of the reading of the Information and as to the waiver of his constitutional rights. The court informed Shacklett of the maximum punishment, the special release period, and the special assessment. The court also gave Shacklett a general outline of the procedure used in applying the sentencing guidelines. In regard to the nature of the offense to which Shacklett sought to plead

* District Judge of the Southern District of Texas, sitting by designation.

guilty, however, the district court made no express admonishments and did not mention the contents of the plea agreement when it accepted Shacklett's plea.

At his subsequent sentencing hearing, Shacklett objected to several findings made in the Presentencing Investigation Report (PSR). Shacklett particularly objected to the court's use of sixty-six pounds of amphetamine to calculate his offense level rather than the nine pounds stipulated in the plea agreement because, he claimed, the government reliably knew of only the lesser amount before Shacklett cooperated. The government conceded that Shacklett cooperated with the investigation within the meaning of Guideline § 1B1.8(a) and that when Shacklett agreed to cooperate, only nine pounds of amphetamine were attributable to Shacklett. The probation officer intervened, stating that the government knew of the sixty-six pounds of amphetamine because Preston Isham, a convicted member of the same drug conspiracy, had informed the government in January 1987 that sixty-six pounds of amphetamine had been produced in his labs in which Shacklett was the "cook." The court ultimately rejected both Shacklett's objections and the government's statement, and adopted the findings made in the PSR. On April 6, 1990, Shacklett was sentenced to 210 months imprisonment, supervised release of three years, no fine and a special assessment of $50.[1]

Shacklett appeals, seeking reversal of his conviction, arguing that the district court's failure to advise him concerning the nature of the charges against him and the existence, terms and impact of the written plea agreement was a complete failure to address a core concern of Rule 11. Shacklett also claims that the district court misapplied Sentencing Guideline § 1B1.8 by in-

cluding the larger quantity of amphetamine in computing his offense level even though the larger quantity was not reliably known to the government before he cooperated.[2]

## II.

### A. Federal Rule of Criminal Procedure 11

■■■ Rule 11 addresses three core concerns: (1) whether the guilty plea was coerced, (2) whether the defendant understands the nature of the charges, and (3) whether the defendant understands the consequences of his plea. *United States v. Bernal,* 861 F.2d 434, 436 (5th Cir.1988), *cert. denied,* — U.S. —, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989). When the trial court "wholly or entirely fails" to address a core concern of Rule 11, the conviction must be overturned. *United States v. Pierce,* 893 F.2d 669, 679 (5th Cir.1990) (citing *United States v. Dayton,* 604 F.2d 931, 939 (5th Cir.1979) (en banc), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980)). If, however, the district court's compliance with Rule 11 is "less than letter perfect" or if it merely inadequately addresses a core concern, this court will evaluate such failure to comply with Rule 11 under a harmless error analysis that focuses on whether the defendant's substantive rights were affected. *Bernal,* 861 F.2d at 436 (citing *United States v. Corbett,* 742 F.2d 173, 179 (5th Cir.1984)); *see also* Fed.R.Crim.P. 11(h). The district court must therefore personally participate in the colloquy mandated by Rule 11 in order to assure itself that the defendant understands what he is admitting and the consequences of his admissions and that his admissions constitute the crime charged. *Dayton,* 604 F.2d at 943.

---

**1.** The Honorable Robert M. Parker, United States District Judge accepted Shacklett's guilty plea. The case was then transferred to Judge William Wayne Justice in April, 1990 for sentencing.

**2.** Shacklett also claims that he was affirmatively harmed by promises contained in the plea agreement which influenced his plea, that the sentencing court abused its discretion and de-

nied him due process by denying Shacklett an evidentiary hearing to resolve the dispute concerning the quantity of drugs attributable to him, and that the district court erred in increasing the level of his offense because he was a manager/supervisor of a criminal operation. Because of our disposition of this appeal, however, we need not address these additional arguments.

■ Shacklett argues that reversal is warranted because the district court failed personally to inform him of the nature of the charges against him, claiming this omission constituted an entire failure to address a Rule 11 core concern. After reading the record carefully, we find that Shacklett's contention is correct—the charge was never read aloud, the court never explained the essential elements, and the charge itself was never mentioned during the proceedings, except by inference when the government established a factual basis for the charge.

The government acknowledges that the district court failed to inform Shacklett of the nature of the charges against him; however, it argues that while the district court's compliance with Rule 11 was "less than letter perfect," it did not wholly fail to address a core concern because clearly Shacklett understood the nature of the charge. The government contends that because Shacklett received a copy of the Information and stated that he had ample time to go over it with his lawyer, Shacklett understood the charge and the consequences of a guilty plea to that charge. The government argues, therefore, that the district court's failure specifically to explain the charge to Shacklett was harmless error. In light of this court's strict precedent, we have no choice but to disagree.

In a factually similar case, this court stated that reversal of the defendant's conviction is required even if the plea agreement itself sufficed to inform the defendant of the charges against him or if the defendant had silently read the plea agreement in the presence of the court, because in order to satisfy the core concerns of Rule 11, the court must personally advise the defendant of the nature of the charges against him. *See Bernal*, 861 F.2d at 437. The district court must establish *on the record* that the defendant understands the charges against him and the consequences of pleading guilty. *Id.* Similarly in *Corbett*, we reversed the district court's acceptance of the guilty plea because the district court failed to read the charge instrument aloud or give the defendant equivalent information upon which to base his plea, even though the defendant admitted all the elements of both counts of the crime when presented by the prosecution as elements it was prepared to prove. *Corbett*, 742 F.2d at 180.

■ In the instant case, the district court never inquired whether Shacklett understood the nature of the charges against him. Shacklett's general understanding of the charge against him without the district court's personal, on-the-record inquiry into the matter is insufficient to support acceptance of the guilty plea by the district court. Therefore, we must reverse Shacklett's conviction and remand to the district court with direction to allow Shacklett to plead anew.[3]

---

**3.** Shacklett also argues that the district court erred by not determining what terms, if any, in the plea agreement induced his plea. The plea agreement states that nine pounds of amphetamine were attributable to Shacklett prior to his cooperation, but the court considered the entire sixty-six pounds for sentencing purposes. Shacklett argues that he voluntarily pled guilty to possessing nine pounds of amphetamine, not sixty-six, and therefore, his plea was induced by that amount. In other words, Shacklett contends that the plea agreement binds the court to calculate his sentence under the Guidelines using the amount listed in the plea agreement, and that he is entitled to have the district court calculate and explain his Guidelines sentence before accepting his plea; otherwise, he argues, his plea is involuntary. Shacklett is wrong on both counts. First, the terms of the plea agreement bind only the government and not the court. *See United States v. Kerdachi*, 756 F.2d

349, 352 (5th Cir.1985). Second, Rule 11 requires that the sentencing court ascertain that the defendant understands that his guilty plea may subject him to the maximum sentence and supervised release period possible under the crime for which he is charged. *See United States v. White*, 912 F.2d 754, 756 (5th Cir.1990); *see also* Fed.R.Crim.P. 11(c)(1). Rule 11 does not require the district court to " 'calculate and explain the Guidelines sentence' before accepting a guilty plea." *White*, 912 F.2d at 756 (citing *United States v. Fernandez*, 877 F.2d 1138, 1143 (2d Cir.1989)). Furthermore, when the plea is accepted, the Presentencing Investigation Report (PSR), upon which the sentence is ultimately based, is not available. Therefore, as long as Shacklett was informed that he could be sentenced to the maximum possible sentence for the crime as charged, Rule 11(c)(1)'s mandate is satisfied.

### B. Reliability of the Information Contained in the PSR

Under Sentencing Guideline § 1B1.8(a), if a defendant agrees to cooperate with the government by providing information concerning the unlawful activities of others, and the government agrees that any self-incriminating information thus revealed will not be used against the defendant, such information shall not be used in determining the applicable guideline range. This restriction, however, does not apply to information known to the government before the defendant enters the plea agreement. U.S.S.G. § 1B1.8(b)(1).

■ At sentencing, Shacklett objected to the inclusion of the sixty-six pounds on the ground that the amount was not reliably known to the government prior to his cooperation. The government conceded that, at the time of Shacklett's plea agreement, it knew of an amphetamine lab, but could confirm only nine pounds of amphetamine as attributable to Shacklett. The probation officer argued to the contrary that prior to Shacklett's plea the government knew of the sixty-six pounds because during an interview, Shacklett's co-conspirator, Isham, told DEA agents that this was the amount produced in his labs for which Shacklett was a cook.

■ In sentencing determinations, the court is not bound by the rules of evidence and may consider any relevant information without regard to its admissibility provided the information considered has sufficient *indicia of reliability.* U.S.S.G. § 6A1.3(a) (emphasis added). Shacklett argues that sufficient indicia of reliability do not exist in this case because the only evidence to support governmental knowledge of the larger amount is the probation officer's unsupported assertion that sixty-six pounds is an accurate amount to attribute to Shacklett. Shacklett also argues that his admissions made after his plea agreement, while attempting to cooperate with the government, were used in violation of Guideline § 1B1.8(a) to substantiate the probation officer's assertion which, at best, was unsubstantiated hearsay in the absence of Shacklett's confirmation. We agree with Shacklett that as to the amount involved no indicia of reliability existed to support the probation officer's contention that sixty-six pounds were known to the government before Shacklett's cooperation.

Shacklett may well have provided most of the information that the PSR contains. The PSR does not refer to the source of the "facts" it contains and is unclear as to who (if not Shacklett) or what provided the information to the probation officer. Throughout the PSR, the probation officer refers to "an interview of Isham," conducted by the DEA, but nowhere is it stated when, where, by whom, or for what purpose Isham was interviewed. It is unclear whether the probation officer who conducted Shacklett's presentence investigation directly contacted the unnamed DEA agent, spoke to Isham personally, or relied on a written report of the interview. Therefore, we are left to review a sentence based on an unproduced report, which could have been either written or oral, made by some unidentified DEA agent at some point before Shacklett cooperated with the government. Contrary to the government's assertion on appeal, the district court could not have made a credibility determination between Shacklett and Isham, because neither Isham nor the mystery DEA agent ever appeared before the sentencing court.

Despite ample notice that Shacklett challenged the reliability of the sixty-six pound quantity, the district court never required the probation officer who prepared Shacklett's PSR to produce the report or support his conclusion in any way. Rather, the court based Shacklett's sentence on the probation officer's bald assertion that the government knew of the amount prior to Shacklett's cooperation. The district court clearly erred in using the sixty-six pounds as a basis for Shacklett's sentence, without more than the probation officer's conclusory statement, particularly in light of the government's concession on the issue.

■ In so holding, we do not intend to change the evidentiary standard for information used by the district court to sentence defendants under the Sentencing Guidelines. Obviously, Guideline

§ 6A1.3(a) requires only that information used to sentence a defendant be grounded in some indicia of reliability. Therefore, we interpret the Sentencing Guidelines as requiring that the facts used by the district court for sentencing purposes be reasonably reliable.

For the foregoing reasons the judgment of the district court is REVERSED, the sentence is VACATED, and the case is REMANDED to permit Shacklett to plead anew.