IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-1459

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ERIC MARSH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(June 4, 1992)

Before HILL,* KING, and DAVIS, Circuit Judges.

PER CURIAM:

After making a plea agreement with the Government, Eric
Marsh pled guilty to money laundering and conspiracy charges.  He
appeals the sentence imposed by the district court and the
Government agrees that Marsh should be resentenced.  We vacate
and remand for resentencing.

I.

From May 1988 until May 1990, Marsh was actively involved in
the sale and distribution of 3,4 Methylenedioxymethamphetamine, a
controlled substance commonly known as "Ecstasy."  When Marsh

_____

* Senior Circuit Judge of the Eleventh Circuit, sitting by
designation.

became aware that he was the subject of a criminal investigation, he sought counsel. Through counsel, Marsh engaged in a series of discussions with the Internal Revenue Service and the Assistant United States Attorney charged with the investigation which culminated in a cooperation agreement.

On January 17, 1991, Marsh was charged with money laundering and conspiracy to conduct financial transactions affecting interstate commerce with proceeds from the sale of a controlled substance, in violation of 18 U.S.C. §§ 371 and 1956(a)(1)(B)(i). On January 25, 1991, Marsh entered a written plea agreement with the Government. Marsh agreed to plead guilty to these charges and fully cooperate with the Government. In exchange, the Government agreed that Marsh would "not be prosecuted further for activities that occurred or arose out of [his] participation in the crimes charged in the Information that are known to the government at this time." The Government also agreed to apprise the court at sentencing of the extent and nature of Marsh's cooperation.

The district court sentenced Marsh to eighty-seven months imprisonment and a three-year term of supervised release. The district court arrived at this sentence by enhancing Marsh's base offense level by four levels for laundering money in an amount greater than $600,000,[1] and an additional three levels for acting as a manager or supervisor of criminal activity.[2] Marsh

---

[1] See U.S.S.G. § 2S1.1(b)(2)(E).

[2] See U.S.S.G. § 3B1.1(b).

2

objected, arguing that § 1B1.8 of the United States Sentencing

Guidelines ("U.S.S.G." or "guidelines")[3] prevented the court from

using the information that he provided to the probation office in

reliance on the plea agreement as a basis for these enhancements.

The district court rejected Marsh's argument.  It determined that

it was not bound by the Government's agreement not to use self-

incriminating evidence proffered by Marsh during his cooperation

and found nothing in the plea agreement attempted to limit the

sentence that the court could impose.

---

[3] Section 1B1.8 states:

Use of Certain Information

(a)   Where a defendant agrees to cooperate with the
      government by providing information concerning unlawful
      activities of others, and as part of that cooperation
      agreement the government agrees that self-incriminating
      information provided pursuant to the agreement will not
      be used against the defendant, then such information
      shall not be used in determining the applicable
      guideline range, except to the extent provided in the
      agreement.

(b)   The provisions of subsection (a) shall not be applied
      to restrict the use of information:

      (1)   known to the government prior to entering into the
            cooperation agreement;

      (2)   concerning the existence of prior convictions and
            sentences in determining §4A1.1 (Criminal History
            Category) and §4B1.1 (Career Offender);

      (3)   in a prosecution for perjury or giving a false
            statement; or

      (4)   in the event there is a breach of the cooperation
            agreement by the defendant.

II.

The sole issue on appeal concerns whether U.S.S.G. § 1B1.8 permits a district court to calculate the applicable offense level based on self-incriminating information revealed by a defendant to a probation officer in reliance on the Government's agreement not to use such information to further prosecute the defendant.  We review de novo legal issues arising out of the application of the guidelines.  See 18 U.S.C. § 3742(e); United States v. Soliman, 954 F.2d 1012, 1013-14 (5th Cir. 1992).

The district court appears to have adopted the position of the AUSA during sentencing that § 1B1.8 of the guidelines exempted from its prohibition information that a defendant reveals to the probation office during its presentence investigation and report which § 1B1.8 would otherwise protect. On appeal, the Government retreats from this position and now agrees with Marsh that any self-incriminating information which he revealed to the probation office in reliance on § 1B1.8(a) and the plea agreement should not have been used in determining the guideline range.  We agree with both Marsh and the Government that § 1B1.8 prohibits the sentencing court from taking such information into account in calculating the applicable guideline range.  See United States v. Shacklett, 921 F.2d 580, 584 (5th Cir. 1991); United States v. Kinsey, 917 F.2d 181, 183-84 (5th Cir. 1990) (agreement "to refrain from further prosecuting Kinsey for other violations" in exchange for defendant's cooperation). The fact that a defendant provides the protected information to

4

the probation office does not alter our conclusion.  Application

Note 5 under the Commentary to § 1B1.8 explains that:

> [t]his guideline limits the use of certain incriminating
> information furnished by a defendant in the context of a
> defendant-government agreement for the defendant to provide
> information concerning the unlawful activities of other
> persons.  The guideline operates as a limitation on the use
> of such incriminating information in determining the
> applicable guideline range, and not merely as a restriction
> of the government's presentation of such information (e.g.,
> where the defendant, subsequent to having entered into a
> cooperation agreement, repeats such information to the
> probation officer preparing the presentence report, the use
> of such information remains protected by this section).

(effective Nov. 27, 1991) (emphasis added).[4]  Application Note 5

was added in the 1991 amendments to the commentary to guideline §

1B1.8, and as such was not in effect at the time of Marsh's

sentencing.[5]  The addition of Note 5, however, was intended only

to clarify the operation of the guideline.  United States

Sentencing Comm'n, United States Sentencing Commission Guidelines

Manual - Appendix C [Amendments to the Sentencing Guidelines

Manual], amend. 390, at 220 (observing that "[t]his Amendment

clarifies the operation of this guideline").  Therefore, we

consider it to be valid and persuasive guidance. See United

States v. Fitzhugh, 954 F.2d 253, 254 (5th Cir. 1992) (citing

United States v. Nissen, 928 F.2d 690, 694-95 (5th Cir. 1991)).

In light of the now-clear policy underlying § 1B1.8 we conclude

---

[4] See also United States v. Kinsey, 917 F.2d 181, 184 (5th
Cir. 1990) (expressing doubt that the drafters of the guidelines
intended to make an indiscernible distinction between prosecutors
and investigators on one hand and probation officers on the
other).

[5] The district court sentenced Marsh on April 22, 1991.

5

that, in calculating Marsh's guideline range, the district court improperly considered information that Marsh provided to the probation officer in reliance on the plea agreement.

Finally, while generally supporting Marsh's contention on appeal, the Government specifically disagrees with Marsh that the findings supporting enhancement under § 3B1.1 for Marsh's role in the offense necessarily came solely from the information he provided following the plea agreement. On remand, the district court should make an express finding as to whether the information supporting any § 3B1.1 enhancement was known to the Government before Marsh entered the plea agreement. See U.S.S.G. § 1B1.8(b)(1); Shacklett, 921 F.2d at 584. If so, the district court should ensure that the previously known information, standing alone, has a sufficient indicia of reliability before using it to calculate Marsh's total offense level. See U.S.S.G. § 6A1.3(a); Shacklett, 921 F.2d at 584.

### III.

For the foregoing reasons, we VACATE the sentence imposed by the district court and REMAND for resentencing in accordance with this opinion.