14 F.3d 597
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
a/k/a Jerry Stanley SULLIVAN, Defendant-Appellant.
 No. 92-5096.
 United States Court of Appeals, Fourth Circuit.
 Dec. 8, 1993.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Huntington. Charles H. Haden, II, Chief District Judge. (CR-91-114)
 Tracy L. Webb, Charleston, WV
 Michael W. Carey, Payl T. Farrell, Huntington, WV
 S.D.W.Va.
 AFFIRMED.
 Before HALL and PHILLIPS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Stacey Lamar Marsh challenges his conviction for conspiracy to distribute cocaine base in violation of 21 U.S.C.A.Sec. 846 (West Supp.1993); possession of a firearm during a drug trafficking crime in violation of 18 U.S.C.A. Sec. 924(c) (West Supp.1993); possession with intent to distribute cocaine in violation of 21 U.S.C.A. Sec. 841(a)(1) (West 1981 and Supp.1993); and possession of a firearm by a convicted felon in violation of 18 U.S.C. Sec. 922(g)(1) (West Supp.1993). Marsh complains that the district court committed plain error in failing to rule on pretrial motions and erred at sentencing in calculating the quantity of drugs properly attributable to him. We affirm.
 
 
 2
 * Members of a Federal Drug Task Force executed a federal search warrant at 13 Northcott Court in Huntington, West Virginia. Task Force members received information that cocaine had been sold from the apartment the previous night. The apartment was quickly secured. Marsh and his brother were arrested, and a number of handguns, a police scanner, a pager, $7100 in cash, and three 35mm film canisters of crack cocaine were seized. At the time of his arrest, Marsh gave a false name to the arresting officers.
 
 
 3
 Autumn Ramsey was the lessee of the apartment. She testified that Marsh telephoned her and asked to come to Huntington. Marsh set up a round-the-clock operation for the sale of drugs, returning to Ohio to buy additional supplies. Ann Washington testified, stating that she was a runner for Marsh. A number of other witnesses stated that they had purchased drugs from Marsh at the apartment.
 
 
 4
 Marsh testified in his own defense, claiming that he knew nothing of the drug operation and that he had come to Huntington for a change of scenery. The jury found Marsh guilty.
 
 II
 
 5
 Marsh first complains that the district judge failed to rule on several pretrial motions. Pretrial confusion with respect to the various motions resulted from the fact that Marsh had three different courtappointed attorneys and, in fact, represented himself for a brief period. In his brief, Appellant asserts that motions to suppress his identification at trial, to suppress his statement of false identity, to exclude statements as to typical behavior of drug traffickers, to exclude evidence of his misidentity, and finally, a motion in limine to exclude evidence of misidentification were not ruled on before trial. He specifically claims that he was prejudiced by the district court's failure to rule on motions to exclude evidence of his misidentification and in-court identifications.
 
 
 6
 Counsel failed to complain of the failure to rule on these motions. Where trial counsel fails to note an error, relief is limited to an examination for plain error. To reverse for plain error, this Court must (1) identify an error, (2) which is plain, (3) which affects substantial rights, and (4) which "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 61 U.S.L.W. 4421, 4424 (U.S.1993) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).
 
 
 7
 Marsh's first complaint concerns testimony that he misidentified himself when first asked for his name. Before trial, the district court refused to suppress this statement as involuntary, stating that the issue was an evidentiary one. The testimony was not objected to at trial. Marsh later explained that he gave a false name to avoid parole problems. Admission of this evidence was not plain error.
 
 
 8
 Marsh next asserts that the district court should have ruled on his motion to exclude in-court identifications because they were based on unduly suggestive photo arrays or lineups. He provides no reference in the record to any suggestive identification procedure. In-court identifications were based on previous encounters with the Defendant. Similarly, failure to rule on this motion was not plain error.
 
 III
 
 9
 Marsh next complains that the district court's determination of the quantity of drugs attributable to him was in error. In sentencing a defendant convicted of drug charges, a district court is charged with calculating the quantity of drugs attributable to the defendant to determine the base level offense. Marsh asserts that he is responsible for only 336.54 grams, resulting in a base level of 34 according to the drug tables of the U.S.S.G. Sec. 2D1.1(c). The district court found Marsh responsible for 1.4 kilograms of cocaine base, giving him a base offense level of 36. We review such factual findings under the clearly erroneous standard. United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir.1989).
 
 
 10
 At the sentencing hearing, Special Agent Turner testified concerning the quantity of drugs attributable to Marsh. Turner seized 67.8 grams of cocaine* and $7104 at the time of Marsh's arrest. He also debriefed Government witnesses Autumn Ramsey and Ann Washington.
 
 
 11
 As noted earlier, Ramsey lived in the apartment which was the base of cocaine sales in Huntington. Turner reported that Ramsey said that Marsh and his co-conspirators made two to three trips per week to Columbus to purchase cocaine over a period of six or seven weeks in February and March. Perhaps during two of those weeks only one trip was made. Agent Turner conservatively estimated the number of trips taken to buy cocaine at ten.
 
 
 12
 With respect to the amount of cocaine procured on each trip, Turner estimated that the amount he recovered represented a typical trip. The agent seized two and one half ounces of cocaine and cash representing the sale of a similar amount. Ann Washington estimated that she sold a minimum of one ounce of cocaine per day during the period in question from Ramsey's house.
 
 
 13
 The final amount of cocaine attributed to Marsh was 1.4 kilograms, based on ten trips to Columbus, buying five ounces per trip. Eight or nine witnesses corroborated both the number of trips and the amount of cocaine on hand. Turner characterized the amount as a conservative estimate.
 
 
 14
 Appellant complained that Turner based his estimates on the debriefing of unreliable witnesses, citing United States v. Simmons, 964 F.2d 763, 776-77 (8th Cir.), cert. denied, 61 U.S.L.W. 3401 (U.S.1992), and United States v. Shacklett, 921 F.2d 580 (5th Cir.1991). The district court was in the best position to evaluate the testimony of Agent Turner. Noting that some of the evidence would be considered hearsay in the context of the sentencing hearing, the district judge specifically credited Turner's testimony and characterized the Government's estimates as conservative. The district court's finding was not clearly erroneous.
 
 
 15
 Accordingly, we affirm Marsh's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 In his brief, Appellant stated that 65.08 grams of cocaine were seized. Both the presentence report and Turner's testimony use the greater figure of 67.8 grams