United States Court of Appeals,

Fifth Circuit.

No. 94-60404.

Larry Shelton HENTZ, Petitioner-Appellant,

v.

Edward HARGETT, Superintendent, Mississippi State Penitentiary,
Respondent-Appellee.

Jan. 8, 1996.

Appeal from the United States District Court for the Northern
District of Mississippi.

Before SMITH, BARKSDALE and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Larry Shelton Hentz (Hentz), a Mississippi state prisoner,
appeals the district court's denial of his petition for federal
habeas relief. 28 U.S.C. § 2254. The district court concluded
that Hentz anticipatorily repudiated the plea agreement when he
informed the prosecutor that his testimony would not comport with
his prior statements. He argues that the State breached the plea
agreement when it brought additional charges against him after
refusing to call him to testify at a codefendant's trial, thereby
rendering it impossible for him to perform his part of the bargain.
Finding that the district court properly denied relief, we affirm.

I. FACTS AND PROCEDURAL HISTORY

The facts and procedural history of this case are rather
involved.[1] A careful understanding of the complicated history

---

[1]Indeed, "[t]he background for this cause would interest
authors of murder mystery novels." *Hentz v. State,* 496 So.2d
668, 669 (Miss.1986).

underlying this appeal is necessary to resolve the issues presented. A grand jury in Tate County, Mississippi returned an indictment charging Hentz with the capital murder of James Williamson (Williamson). Several days into Hentz's trial on this charge, defense counsel approached the prosecutor regarding the possibility of a plea agreement. On November 18, 1983, Hentz entered into a plea agreement that allowed him to plead guilty to the reduced charges of murder (non-habitual) and grand larceny (non-habitual), with consecutive sentences of life imprisonment and five years, respectively. Additionally, the prosecutor agreed to dismiss other pending charges. In exchange, Hentz agreed to be debriefed immediately regarding the events in question, to submit to a polygraph examination to determine the accuracy of such information, and to give truthful testimony at any trial of Cecilia Ann Williamson (Cecilia) and/or Owen Lee Harden (Harden). Cecilia and Harden were Hentz's codefendants.

The State's theory of the case was that the murder was a contract killing. Specifically, Cecilia planned the murder of her husband, Williamson, and enlisted the assistance of Hentz, with whom she was having an affair. To carry out the plan, Hentz hired Harden to shoot Williamson. Both Hentz and Harden were "to be paid for their participation in the crime out of insurance proceeds collected by [Cecilia] upon the death of her husband."[2] Roger Hentz (Roger), Hentz's brother, borrowed a gun and a vehicle from Bill Morrow.

---

[2]*Williamson v. State,* 512 So.2d 868, 870 (Miss.1987).

At the time that Hentz entered into the plea agreement, Harden had been acquitted of the capital murder offense at issue. The State nevertheless planned to prosecute Harden for other related offenses. Harden ultimately pleaded guilty to arson in connection with the burning of the murder victim's home.

Roger was never indicted for his part in this murder offense because he had been granted immunity to testify at Harden's trial. At Harden's trial, with a grant of immunity in his pocket, Roger testified that he alone committed the murder, and the jury acquitted Harden.

Subsequent to Hentz's plea of guilty, Cecilia was brought to trial for the murder of her husband. The prosecutor decided not to call Hentz as a witness after Hentz informed the prosecutor that his testimony would not consist of the information he had provided during the debriefing.[3] Consequently, the prosecutor reinstated certain charges and also brought additional charges against Hentz.

On November 29, 1984, Hentz filed a motion to set aside his guilty plea, alleging that the State breached the plea agreement. The state trial court denied the motion, finding that Hentz breached the agreement by refusing to testify truthfully. The

---

[3]Pursuant to Harden's plea agreement in the arson case, the prosecution called Harden as a witness at Cecilia's trial. Harden nonetheless refused to testify. The prosecution then called other witnesses who testified regarding what Harden had related to them. The jury found Cecilia guilty of capital murder, and she was sentenced to death. The Mississippi Supreme Court reversed Cecilia's conviction, holding that she had been denied her constitutional right to confront the witnesses presented against her. *Williamson v. State,* 512 So.2d 868 (Miss.1987).

3

Supreme Court of Mississippi affirmed the denial of the motion in a published opinion. *Hentz v. State,* 503 So.2d 262 (Miss.1987).[4]

Finally, we note that Harden's trial spawned a perjury charge against Hentz. At Harden's trial, John Taylor Gullett (Gullett) testified that, while he was incarcerated in the county jail, Roger admitted killing Williamson and claimed that Harden, Cecilia, and Hentz were not involved. After the State obtained a letter Hentz had written to his mother indicating that Hentz influenced Gullett's testimony, Hentz was convicted of suborning perjured testimony. Hentz's perjury conviction was reversed on appeal because the indictment did not track the language of the relevant statutes. *Hentz v. State,* 510 So.2d 515 (Miss.1987). In the instant case, as the court below noted, the State "was unable to successfully prosecute any of the four suspects for the murder of Williamson without accepting pleas to lesser charges and was never able to establish who the trigger man was despite nine months of intensive investigation." Hentz remains incarcerated based on the following convictions: murder (sentence of life); grand larceny (consecutive sentence of 5 years); and conspiracy to commit grand larceny (consecutive sentence of life without parole).

On January 29, 1988, Hentz filed the instant petition challenging his murder conviction, alleging that the State violated

---

[4]The Mississippi Supreme Court held that "[r]egardless of whether or not the State violated the plea bargain agreement subsequent to entry of the guilty plea by [Hentz], such violation would not require setting aside the ... guilty plea. Action for relief, if warranted, should be directed to those causes in Lafayette County and Desoto County." *Hentz,* 503 So.2d at 265.

4

the terms of the plea agreement when it brought charges against him subsequent to his murder conviction. The district court granted Hentz's motion for an evidentiary hearing and appointed counsel to represent him.

After the evidentiary hearing, the magistrate judge made the following findings. Hentz was in his fifth day of trial for the murder of Williamson when his attorney approached the State concerning a plea bargain in which Hentz would agree to plead guilty and testify truthfully against his codefendants Cecilia and Harden. The State's primary objective was to successfully prosecute Cecilia after Harden had been acquitted. The State needed Hentz's testimony to obtain her conviction. The State's theory of the case was that, pursuant to Cecilia's request, Hentz hired Harden to be the triggerman.

Investigator Jimmy Dees and two other investigators escorted Hentz to the Tate County Jail to record the details of the plan to kill Williamson. The interview with Hentz was recorded on audio tape; however, the tape was lost prior to the evidentiary hearing. Robert Williams, the district attorney, understood that Hentz would testify in accordance with the information he gave the officers during his debriefing.

Dees was present throughout Hentz's interview and recalled the admission and details provided by Hentz during the interview with respect to the murder of Williamson. Hentz admitted that he had been having an affair with Cecilia and that she enlisted his assistance in a plan to kill her husband. Hentz hired Harden by

5

promising him $10,000 to shoot and kill Williamson. Hentz also recruited his brother, Roger, to borrow a gun and a vehicle from Bill Morrow. Cecilia was to leave the back door of her home unlocked on the morning of the murder so that Roger and Harden could enter the house and hide in the bathroom until after she left for work. Harden was to shoot Williamson and then start a fire in the bedroom.

After making that statement, Hentz was returned to the courthouse where the plea agreement was signed in the presence of Hentz's trial attorneys. On that same day, the court accepted Hentz's guilty plea and imposed a life sentence. Three days later, the State administered a polygraph test to Hentz to verify the truthfulness of his statement.[5]

Subsequently, Cecilia was tried for the murder of her husband, Williamson. The night before Hentz was to testify at Cecilia's trial, Williams, Criminal Investigator Jimmy Radford, and an assistant district attorney, met with Hentz to prepare for his testimony the following day. Hentz then informed Williams that he did not think that Williams would want to call him to testify because Williams would not want to hear the substance of his testimony. Hentz then related that his previously immunized

---

[5]The examiner found no indication of deception. However, the magistrate judge did not allow the admission of the results for the purpose of showing whether Hentz' statements were true or false. Instead, the results were admitted for the sole purpose of establishing the basis on which the prosecution acted in this case. In other words, the results were admitted to establish the reasonableness of the State's position in asserting a breach of the plea agreement when Hentz subsequently changed his version of the events.

brother, Roger, acted alone to commit the murder. Williams replied that he considered the plea agreement breached and returned to his motel room to replan his trial strategy. Williams believed that had he called Hentz to testify, Hentz would have done so, but would have testified untruthfully.

Based on the above findings, the magistrate judge concluded that, by recanting his earlier statements, Hentz had breached the plea agreement. Therefore, the magistrate judge reasoned, the State was excused from calling him to testify at Cecilia Williamson's trial under the contract principle of anticipatory repudiation. After rejecting Hentz's remaining arguments, the magistrate judge recommended denying Hentz's petition for habeas relief. The district court adopted the recommendation and denied relief. Hentz now appeals.

## II. ANALYSIS

### A. WHETHER THE DISTRICT COURT PROPERLY FOUND THAT HENTZ BREACHED THE PLEA AGREEMENT.

"Plea bargain agreements are contractual in nature, and are to be construed accordingly." *United States v. Ballis,* 28 F.3d 1399, 1409 (5th Cir.1994). We must determine whether the district court properly determined that Hentz breached the plea agreement.

The court below held that the contract law principle of "anticipatory repudiation" applied to determine who breached the plea agreement. The Restatement of Contracts defines repudiation as "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim ... for total breach...." *Restatement (2d) of Contracts,*

7

§ 250 (1979). Further, "[w]here performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance." *Restatement (2d) of Contracts,* § 253(2).

Relying on a comment to § 255 of the Restatement of Contracts, the district court determined that when Hentz informed the district attorney that he would not testify in accordance with the statements he provided during his debriefing, the State was entitled to rely on that representation. *Restatement (2d) of Contracts,* § 255(a). Section 255, Comment (a) provides in part that:

> No one should be required to do a useless act, and if, because of a party's repudiation, it appears that the occurrence of a condition of a duty would not be followed by performance of the duty, the non-occurrence of the condition is generally excused. In judging whether occurrence of the condition would be followed by performance of the duty the obligee may take the obligor at his word.

Based on the above authorities, the district court reasoned that, to assert a breach of the plea agreement, the State was not required to call Hentz as a witness. It held that Hentz's "repudiation operated to excuse the non-occurrence of such a condition when it appeared that the condition precedent (testifying) would not be followed by performance of petitioner's duty (to testify consistent with his first statement)." Accordingly, the district court determined that when Hentz agreed to testify truthfully, the State bargained for what he represented the truth to be at the time the agreement was reached, *i.e.,* what he said during the debriefing. By recanting, the district court

8

reasoned, Hentz breached the agreement, and thus, the State was excused from calling him to testify.

Hentz argues that the district court erred when it held that he, not the State, breached the plea agreement because he was never given the opportunity to perform his part of the contract. He contends that calling him to testify was a condition precedent to the State's contention that he breached the plea agreement. Hentz's argument is not compelling. Of course, calling Hentz as a witness was a condition precedent to Hentz's testifying for the State. However, if the principle of anticipatory repudiation properly applies in the instant case, as the court below found, then the condition precedent of calling Hentz to the stand to testify was *excused*.[6]

Hentz also argues that the district court misinterpreted his obligation "to testify truthfully" to mean that his testimony would be consistent with his prior statements. According to Hentz, there is no evidence that the district attorney or anyone else informed him that his "truthful testimony" was to consist of the statements made during his debriefing in which he implicated Cecilia, Harden, and himself in the crime. He adds that the plea agreement does not define what constitutes "truthful testimony" and that any ambiguity

---

[6]We have acknowledged the principle of anticipatory repudiation in the context of a plea bargain. *United States v. Owen,* 492 F.2d 1100, 1108 (5th Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974); *United States v. Thomas,* 593 F.2d 615, 623 (5th Cir.), *reversed on other grounds on rehearing,* 604 F.2d 450 (5th Cir.1979). Ultimately, however, we found that the principle did not apply in either of those two cases.

9

must be construed against the State in accordance with established contract principles. Hentz submits that his second version of the facts surrounding the murder was the truth and therefore would have constituted truthful testimony at Williamson's trial in accordance with his plea agreement. We do not find these arguments persuasive.

After an evidentiary hearing, the magistrate judge found that the evidence tended to establish that Hentz's initial statements were truthful rather than the statements proffered the night before Hentz was to testify against Cecilia. As the court acknowledged, Williams had several reasons for believing Hentz's first version of the events, including: the testimony of Bill Morrow at Hentz's trial; information from a jail house informant; statements given by Cecilia; and a letter Hentz wrote to his mother apparently indicating that he had suborned the perjured testimony of Gullett. Because the district court's finding is supported by the record, it is not clearly erroneous.

Further, although the agreement does not define "truthful testimony," we are hard pressed to believe that Hentz understood that the State bargained for Hentz's testimony at the trial of Cecilia to consist of exculpating Cecilia, Harden (the alleged triggerman), and himself in exchange for evading the possibility of being sentenced to death[7] or life without parole. Such an interpretation of the plea agreement would be unreasonable. *Cf.*

---

[7]A death sentence was not necessarily an unlikely sentence in view of the fact that Cecilia was sentenced to death.

*Restatement (2d) of Contracts,* § 203 (1979).[8] One can hardly imagine a more unlikely scenario than the State's agreeing to a negotiated plea of guilty so that the defendant could testify in a later trial that he was not guilty.[9]

Accordingly, in light of the district court's finding that the evidence indicated that Hentz's initial statements were truthful, we find that Hentz anticipatorily repudiated the agreement when he informed the prosecutor that his testimony would not comport with his prior statements.

Finally, we note that the plea agreement also provided that Hentz agreed to later submit to a polygraph examination to determine the accuracy of the information previously given during the debriefing. According to Hentz, the version of the events he initially provided during the debriefing was false. Hentz therefore breached the plea agreement regardless of whether he gave false information during the debriefing or whether his later

---

[8]Section 203 of the Restatement 2d provides in part that:

> In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable:
>
>> (a) an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect
>
>> ....

[9]We also recognize that an attorney may not call a witness to the stand when the attorney knows the witness is going to perjure himself and that a prosecutor has ethical obligations to bargain only for *truthful* testimony.

11

proposed testimony was false.[10]

B. WHETHER THE DISTRICT COURT ERRED IN FINDING THAT HENTZ WAS NOT
   ENTITLED TO WITHDRAW HIS GUILTY PLEA.

Hentz argues that the following provision in the plea agreement required that he be allowed to withdraw his plea.

> It is expressly understood between the parties that if the Defendant does not honor the terms and conditions of this agreement, that the State will consider the agreement *null and void.* Any breach of this agreement whatsoever by the Defendant will cancel each and every portion of the agreement thereof and the State will be permitted to take any and all action and/or actions deemed advisable, in the sole discretion of the State.

(emphasis added). Hentz contends that, assuming *arguendo* he violated the agreement, the entire agreement was rendered "null and void," and therefore, "his promise to plead guilty to murder and grand larceny was canceled at the same exact moment when Respondent's promise to dismiss other charges pending against Petitioner ... was canceled."

Hentz's contention ignores the fact that he had not only *promised* to plead guilty at the time he breached the plea

---

[10]Additionally, relying on *Danley v. State,* 540 So.2d 619 (Miss.1988), Hentz argues that the State breached the plea agreement when the district attorney unilaterally decided that Hentz had breached the bargain. In *Danley v. State,* 540 So.2d 619 (Miss.1988), the Mississippi Supreme Court held that a district attorney could not make the decision whether the defendant had failed to perform the condition precedent. That decision had to be made by the court.

To the extent that *Danley* involves a state procedural rule, it is not of constitutional concern, and therefore not cognizable in this federal habeas proceeding. In any event, Hentz, as a federal habeas petitioner, must state a constitutional claim regardless of the Mississippi Supreme Court's decision in *Danley.* He has failed to do so.

12

agreement, he had already pleaded guilty.[11]  In any event, "
"failure of the defendant to fulfill his promise to cooperate and
testify fully and honestly releases the government from the plea
agreement.' "  *Ballis,* 28 F.3d at 1410 (quoting *United States v.
Gonzalez-Sanchez,* 825 F.2d 572, 278 (1st Cir.), *cert. denied,* 484
U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987)).  Further, if a
defendant materially breaches his plea agreement, the prosecution
is released from its obligations under that agreement and may bring
a new indictment on previously dismissed charges.  *Id.,* 28 F.3d at
1409.

Hentz next argues that his guilty plea was not knowing and
voluntary because he was not informed that he would be unable to
withdraw his plea if *he* breached the plea agreement.  A federal
habeas court will uphold a guilty plea if it was knowing,
voluntary, and intelligent.  *Hobbs v. Blackburn,* 752 F.2d 1079,
1081 (5th Cir.), *cert. denied,* 474 U.S. 838, 106 S.Ct. 117, 88
L.Ed.2d 95 (1985).  Before accepting a guilty plea the "court must
ensure that the defendant has a full understanding of what the plea
connotes and of its consequence." *Taylor v. Whitley,* 933 F.2d 325,
329 (5th Cir.1991), *cert. denied,* 503 U.S. 988, 112 S.Ct. 1678, 118
L.Ed.2d 395 (1992) (internal quotations and citation omitted).

As the court below opined, when the defendant, rather than
the prosecutor, breaches the agreement, the voluntariness of the
plea is not at issue because it was not the defendant who acted in

_____

[11]Indeed, Hentz filed the motion to set aside his guilty
plea over nine months after he was indicted for suborning
perjury.

13

reliance on a false or unkept promise. "[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand." *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). The court also noted that Hentz has never asserted that the State induced him to plead guilty by false promises.

In support of his argument that he was entitled to notice of the consequences flowing from his breach of the agreement, Hentz cites *Innes v. Dalsheim,* 864 F.2d 974 (2d Cir.1988), *cert. denied,* 493 U.S. 809, 110 S.Ct. 50, 107 L.Ed.2d 19 (1989). In that case, the defendant entered his guilty plea and was allowed to remain on bond pending sentencing. During that interim, the defendant was arrested on additional charges. The sentencing court found that the defendant had breached the plea agreement and imposed a sentence greater than the one in the plea agreement. The Second Circuit held that the district court erred in refusing to allow the defendant to withdraw his guilty plea because (1) the court had not informed him, at the guilty plea hearing, that he would not be able to withdraw his plea if he violated the terms of the plea agreement, and (2) the court imposed a sentence greater than the one contained in the plea agreement. *Id.* at 979-80.

We find *Innes* inapposite.[12] Unlike the defendant in *Innes,*

_____

[12]*Cf. Parry v. Rosemeyer,* 64 F.3d 110, 115 n. 8 (3d Cir.1995) (distinguishing *Innes,* the Third Circuit explained that "Parry ultimately received a higher sentence than he was expecting solely because of his *post* -sentencing conduct in violation of the terms of his probation.") (emphasis in

14

Hentz received the life sentence for which he bargained, and as set forth previously, the prosecution may bring additional charges if the defendant breaches the plea agreement. *Ballis, supra.*

Finally, the above-quoted provision in the plea agreement upon which Hentz relies gave him sufficient notice that the consequences of any breach he committed would be in the sole discretion of the State. Hentz has failed to show that his guilty plea was unknowing and involuntary. *See Mabry,* 467 U.S. at 509-11, 104 S.Ct. at 2547-48.

Accordingly, the judgment of the district court is AFFIRMED.

---

opinion), *petition for cert. filed,* (U.S. Nov. 13, 1995) (No. 95-6719).