United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 9, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

————————

No. 03-41338

————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARIA AGUILERA,

Defendant - Appellant.

Appeal from the United States District Court
For the Eastern District of Texas
USDC No:9:02-CR-49-1

Before HIGGINBOTHAM, DAVIS, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

After making a plea agreement with the Government, Maria Aguilera pleaded guilty to one

count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Aguilera

appeals the sentence imposed by the district court. She claims that her sentence was imposed in

breach of her plea agreement and in violation of U.S. SENTENCING GUIDELINES MANUAL § 1B1.8

————————————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

because the district court relied upon self-incriminating evidence that Aguilera provided pursuant to her plea agreement. Although the district court relied, at least in part, on Aguilera's self-incriminating statements, in this case the court's reliance did not breach the plea agreement or violate § 1B1.8.

Aguilera was the passenger in a sports-utility vehicle that was stopped for a traffic violation. The vehicle was registered in Aguilera's name. The police officer received consent to search the vehicle and discovered an electronically-controlled secret compartment behind the rear seat that contained approximately twenty kilograms of cocaine. Based on these facts Aguilera chose to plead guilty.

As part of her plea agreement, Aguilera agreed to "provide complete and truthful information and testimony . . . in regards to all facts that [Aguilera] knows surrounding illegal activities in the Eastern District of Texas and elsewhere." The plea agreement includes a penalty if Aguilera failed to "completely and truthfully" comply with that requirement. The agreement states that failure to comply could "result in this agreement becoming unenforceable, the prosecution of [Aguilera] for any federal offense [Aguilera] may have committed, and the use by the Government of [Aguilera]'s statements made pursuant to this agreement against [Aguilera] in any proceeding." In return the Government agreed "not to prosecute [Aguilera] . . . for any offense," other than the possession charge listed in the plea agreement, "arising from the facts and circumstances of the charges in this case and known to the United States Attorney or derived from information received . . . pursuant to this agreement."

The presentence report ("PSR") assigned a base offense level of 34, which was reduced to 29 after reductions for meeting the safety-valve criteria and for acceptance of responsibility. The PSR concluded that Aguilera was not entitled to a mitigating role reduction under U.S. SENTENCING

GUIDELINES MANUAL § 3B1.2 because she was to receive $8,000 for transporting the drugs in this case. Aguilera objected to the PSR, arguing that she should be awarded a minor role reduction under U.S.S.G. § 3B1.2(b) because she was only a drug courier. In the probation officer's response, he recommended against granting Aguilera a minor role reduction because she had "admitted to transporting controlled substances in the same manner on two previous occasions," and that "[w]hile [Aguilera's] role in the offense was different than that of other participants, it was essential in carrying out the conspiracy." The government learned of the $8,000 payment from Aguilera's statement to the probation officer and learned of her previous transportation of controlled substances from a statement she made during debriefing. The government does not contend that it knew either of these facts before Aguilera made these cooperation statements.

At her sentencing hearing Aguilera again argued that she should receive a § 3B1.2(b) minor role reduction. The Government responded to Aguilera's argument as follows:

> In order to grant the additional two points for minor participant, as the Court knows, that's a fact intensive determination, and in this case we're talking about 20 kilos of cocaine hidden in an electronically controlled compartment behind the rear seat of a vehicle that was registered to Ms. Aguilera in this case. And she was, in addition to this, to receive $8,000 for transporting the cocaine from Houston to Illinois.
>
> So we believe because of those facts she would not fall into the category of a minor participant

After this statement, the court noted "that the Probation Officer in his respon[se] said [Aguilera] has admitted to transporting controlled substance in the same manner on previous occasions." The Government replied "That is correct, Your Honor, on one previous occasion she has done this before." Although Aguilera's trial counsel did not object to these statements, he did reply that "with

regard to the additional transaction that the Probation Department pointed out, . . . that was discovered through debriefing, not debriefing for the safety valve, . . . debriefing with the Assistant U.S. Attorney." Following this discussion, the district court overruled Aguilera's objection regarding the § 3B1.2 mitigating role reduction and sentenced her to 87 months imprisonment. The probation officer calculated that Aguilera's sentencing range would have been 46 to 57 months if she received a § 3B1.2 reduction.

As it is conceded that Aguilera's trial counsel did not object to the statements regarding the $8,000 payment or her previous transportation of controlled substances, our review is for plain error. *See United States v. Branam*, 231 F.3d 931, 933 (5th Cir. 2000). This standard requires that we find 1) and error has occurred; 2) that the error is plain; and 3) that the error must affect a substantial right. *United States v. Olano*, 507 U.S. 725, 732-34 (1993). Nevertheless, even if we find plain error, "we will not exercise our discretion to correct a forfeited error unless it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Branam*, 231 F.3d at 933 (*citing Olano*, 507 U.S. at 735-36).

Aguilera's first argument on appeal is that the use of her cooperation statements to determine her sentence was a breach of her plea agreement. "The Government's breach of a plea agreement can constitute plain error." *Branam*, 231 F.3d at 933 (internal quotations and citations omitted). "In determining whether the terms of the plea bargain have been violated, the court must determine whether the government's conduct is consistent with the parties' reasonable understanding of the agreement." *United States v. Wilder*, 15 F.3d 1292, 1295 (5th Cir. 1994) (internal quotations and citations omitted). As the party alleging a breach of the plea agreement, Aguilera bears the burden of proving the facts establishing the breach by a preponderance of the evidence. *See id*. We apply

the general principles of contract law to interpret the terms of a plea agreement. *See Hentz v. Hargett*, 71 F.3d 1169, 1173 (5th Cir. 1996). "If a breach has in fact occurred, the sentence must be vacated without regard to whether the judge was influenced by the government's actions." *United States v. Saling*, 205 F.3d 764, 766-67 (5th Cir. 2000).

A reasonable understanding of the plea agreement's language permits the use of Aguilera's cooperation statements to determine her sentence. The only explicit limitation placed upon the Government by the plea agreement is that Aguilera cannot be prosecuted on the basis of information it received from Aguilera pursuant to the plea agreement. The Government has complied with this limitation. Agreeing not to prosecute Aguilera on the basis of information obtained pursuant to the plea agreement, however, is very different from agreeing not to use that information to determine Aguilera's sentence for the crime to which she pleaded guilty. Even Aguilera concedes that the plea agreement does not explicitly state that her cooperation statements would not be used to determine her sentence. Instead Aguilera argues that this limitation is implied by the plea agreement.

According to Aguilera, the plea agreement implies that her cooperation statements cannot be used to determine her sentence because of the penalty imposed by that agreement if she fails to comply with its terms. Aguilera argues that because her plea agreement explicitly permits the Government to use her cooperation statements against her "in any proceeding" if she fails to "provide complete and truthful testimony" the plea agreement implies the converse, that these statements would not be used against her in any proceeding if she complies with the plea agreement's terms. Aguilera claims that using her cooperation statements to determine her sentence violates this implied limitation, and is a breach of her plea agreement.

Aguilera's plea agreement does not contain an implied prohibition on the use of her

cooperation statements to determine her sentence. The plea agreement contains a clause stating "that no other promise has been made or implied by either [Aguilera] or the Government." Thus, a reasonable understanding of the plea agreement does not include an implied limitation upon the Government's use of Aguilera's cooperation statements. In addition, the potential use of Aguilera's cooperation statements in other proceedings is one of a number of penalties that the plea agreement imposes upon her if she fails to comply with the agreement's terms. The language of this penalty provision does not indicate that the parties intended it to serve as a limitation upon the Government. Nor does this penalty language indicate that the parties intended this penalty to benefit Aguilera by excluding information relevant to the determination of her sentence. If the parties had intended the plea agreement to prohibit the use of Aguilera's cooperation statements when determining her sentence they could have done so explicitly or by referring to U.S.S.G. § 1B1.8. The fact that the parties chose not to do so in this case indicates that they did not intend to prohibit the use of these statements when determining Aguilera's sentence. The Government did not breach the plea agreement in this case.

Aguilera also claims that the use of her cooperation statements to determine her sentence was a violation of U.S.S.G. § 1B1.8. Under § 1B1.8, when a defendant agrees to provide information concerning the unlawful activities of others, and "as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in that agreement." U.S.S.G. § 1B1.8. The guideline commentary indicates that § 1B1.8 only applies when there is a cooperation agreement relating "to the provision of information concerning the unlawful activities of others." *Id.* at cmt. n. 6. The scope

of § 1B1.8 includes self-incriminating statements made to a probation officer after entering into this type of cooperation agreement. *Id*. at cmt. n. 5. As part of her plea agreement Aguilera agreed to provide information concerning the unlawful activities of others. The plea agreement does not contain a specific reference to § 1B1.8, but Aguilera argues that the Government's agreement not to prosecute her based upon her self-incriminating statements is enough to trigger § 1B1.8.

In *United States v. Marsh*, 963 F.2d 72 (5th Cir. 1992), the defendant pleaded guilty and agreed to fully cooperate with the Government. *Id*. at 73. "In exchange, the Government agreed that Marsh would 'not be prosecuted further for activities that occurred or arose out of [his] participation in the crimes charged in the Information that are known to the government at this time.'" *Id*. (alteration in original). Although this plea agreement did not explicitly invoke § 1B1.8, we held that the district court violated § 1B1.8 because it "improperly considered information that Marsh provided to the probation officer in reliance on the plea agreement." *Id*. at 74.

*Marsh* is distinguishable from the facts of this case. The sentence in *Marsh* was reviewed *de novo* while our review in this case is for plain error. Moreover, in *Marsh* the Government conceded that § 1B1.8 applied to the information that Marsh gave to the probation officer. *Id*. Here the Government argues that § 1B1.8 does not apply to Aguilera's cooperation statements and the plea agreement itself contains neither an express nor an implied understanding that § 1B1.8 applied those statements. Finally, the cooperation statements in *Marsh* were used to enhance the defendant's sentence. *Id*. at 73. Aguilera's cooperation statements, in contrast, were only part of the evidence that the district court considered when deciding whether she should receive a § 3B1.2(b) minor role reduction. To receive a minor role reduction, the defendant must demonstrate that they are "substantially less culpable" than other participants in the criminal enterprise in light of all relevant

conduct. *United States v. Garcia*, 242 F.3d 593, 597-98 (5th Cir. 2001). Consideration of a defendant's cooperation statement in response to her assertion that she was a minor participant is very different from actively using those statements to enhance the defendant's sentence. Thus, *Marsh* does not control in this case.

Aguilera also cites a number of other opinions to support her claim that the use of her self-incriminating statements in this case violated § 1B1.8. In each of these cases, however, the plea agreements explicitly provided that any cooperation statements could not be used to determine a defendant's sentence pursuant to § 1B1.8. *See*, *e.g.*, *United States v. Gonzalez*, 309 F.3d 882, 883 (5th Cir. 2002) (plea agreement contained a provision that explicitly stated § 1B1.8 applied); *see also United States v. Washington*, 146 F.3d 219, 221 (4th Cir. 1998) (holding that use of cooperation statements to deny § 3B1.2 minor role reduction violated § 1B1.8 in a case where the plea agreement explicitly provided that § 1B1.8 applied to these statements). These cases are not controlling because the parties in this case chose not to include any reference to § 1B1.8 in the plea agreement.

It is arguable that § 1B1.8 permits consideration of Aguilera's cooperation statements because that guideline permits the use of those statements to the extent provided in the plea agreement. U.S.S.G. § 1B1.8(a). In this case the plea agreement is strictly limited to its terms and states that no implied promises were made in that agreement. The only explicit limitation imposed upon the use of Aguilera's cooperation statements was the Government's promise not to prosecute her based upon those statements. The plea agreement contains neither an explicit nor an implicit promise not to use the cooperation statements to determine Aguilera's sentence. Consequently, the use of these statements is arguably permitted by § 1B1.8, and even if consideration of these statements was an error it does not rise to the level of plain error because the error is not clear or obvious. *See Olano*,

507 U.S. at 732-34 .

Even if the district court's consideration of Aguilera's cooperation statements when it determined her sentence is a violation of § 1B1.8 that constitutes plain error, we still decline to exercise our discretion to correct this forfeited error because it does not seriously affects the fairness, integrity, or public reputation of the judicial proceeding. *United States v. Olano*, 507 U.S. 725, 735-36 (1993).  The district court only considered Aguilera's cooperation statements when evaluating her claim that she was a minor participant in this criminal enterprise.  Aguilera is attempting to secure a § 3B1.2 minor role reduction while using § 1B1.8 to prevent the district court from considering information relevant to that determination.  Although § 1B1.8 seems to protect statements made by the defendant to the government and the probation officer, it clearly does not condone the presentation of half truths to the district court.  Moreover, Aguilera's cooperation statements were only part of the evidence considered when determining whether Aguilera had a minor role.  The other evidence, including the fact that the vehicle containing the electronically sealed compartment used to transport the drugs was registered to Aguilera, indicates that Aguilera did not have a minor role.  Therefore, the fact that Aguilera's cooperation statements were part of the evidence before the district court when it made its § 3B1.2 minor role determination does not affect the fairness or integrity of that determination.

The plea agreement in this case is reasonably understood to permit the use of Aguilera's self-incriminating statements to determine her sentence guideline range, and the use of those statements was not a breach of the plea agreement.  The use of Aguilera's cooperation statements did not violate § 1B1.8 because the terms of the plea agreement do not prohibit the use of those statements in sentencing.  Moreover, even if the use of Aguilera's cooperation statements was a plain error

violation of § 1B1.8, we decline to exercise our discretion to correct the forfeited error because it did not affect the fairness and integrity of the sentencing determination. For the above reasons we AFFIRM the sentence imposed by the district court.