938 So.2d 1254 (2006)
Tracy Darnell MOORE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00275-COA.
Court of Appeals of Mississippi.
January 31, 2006.
Certiorari Denied October 5, 2006.
*1256 James A. Williams, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
EN BANC.
GRIFFIS, J., for the Court.
¶1. Tracy Darnell Moore was convicted in the Lauderdale County Circuit Court of the crimes of kidnapping and robbery by use of a deadly weapon. For the kidnapping charge, Moore was sentenced to twenty-five years imprisonment plus payment of $8,000 restitution. For the armed robbery charge, Moore was sentenced to thirty years imprisonment. The sentences were to run concurrently. Moore's motion for judgment notwithstanding the verdict or a new trial was denied, and Moore appealed. Finding no error, we affirm.

FACTS
¶2. On the morning of January 10, 2002, two masked gunmen broke into Ralph and Elizabeth Morgan's home, bound the Morgans with duct tape, and proceeded to take the couple's money, rings, and property, while repeatedly threatening to kill the couple throughout the roughly forty-five minute ordeal. After the men left the home, the Morgans phoned the police, who arrived approximately fifteen minutes later. During an investigation of the Morgans' property, police found a cellular phone dropped near a barbed wire fence, which they quickly traced to Tracy Darnell Moore.
¶3. A grand jury initially indicted Moore on November 15, 2002, for the offenses of kidnapping and armed robbery. Moore, represented by appointed counsel, entered into a plea bargain with the State, in which he agreed to a plea of guilty to armed robbery and to testify truthfully against his co-defendant, whom he had identified as Lee Amerson, in return for a reduced sentence of fifteen years in the custody of the Mississippi Department of Corrections ("MDOC") for the armed robbery charge and nolle prosequi of the kidnapping charge. As a result of his plea agreement, the circuit court convicted Moore of armed robbery and sentenced him to fifteen years imprisonment on February 12, 2003, with credit for jail time served, and ordered payment of $248.50 in court costs and a $1,000 fine.
*1257 ¶4. During Amerson's trial in April 2003, Moore refused to testify, despite his earlier plea agreement with the State. Consequently, the circuit court held Moore in criminal contempt and sentenced him to a thirty day fixed sentence and a fine of one hundred dollars. At the conclusion of the trial, Amerson was acquitted.
¶5. As a result of Moore's refusal to testify, the State moved to revoke Moore's plea bargain, vacate the armed robbery sentence, and reinstate the kidnapping charge. The circuit court granted the State's motion on April 29, 2003, and the grand jury again indicted Moore for kidnapping and armed robbery on August 1, 2003. Moore moved to dismiss on the grounds that the circuit court's April 29, 2003 order granting the State's motions was entered after the term of court had ended, and thus exceeded the court's authority. Moore's motion to dismiss additionally alleged that re-indictment on the charges constituted a violation of double jeopardy. The circuit court denied Moore's motion, and Moore was tried and found guilty of kidnapping and armed robbery.
¶6. Aggrieved by the trial court's rulings, Moore asserts the following on appeal: (1) that he was subjected to double jeopardy and denied due process of law for his re-indictment and conviction on the charges and that such conviction was additionally outside of the circuit court's authority because it was entered outside of the term in which the original sentence was entered; (2) that he was subjected to double jeopardy and denied due process of law through multiple punishments for the same crime when he was sentenced to criminal contempt for refusal to testify; (3) that he was subjected to double jeopardy and denied due process of law through being convicted of both kidnapping and armed robbery when the charges arose from the same incident; (4) that he should be granted a new trial because of a jury instruction that varied from the indictment and allowed instructions involving accomplice liability as well as containing an assumption of fact that the crime was committed; (5) that he was denied fundamental fairness and due process of law by reason of prosecutorial vindictiveness; (6) that he was denied his right to silence as a result of the State's statements during closing argument; and (7) that he was denied effective assistance of counsel.

ISSUES AND ANALYSIS
I. Whether Moore was subjected to double jeopardy and denied due process of law when re-indicted and convicted on kidnapping and armed robbery charges and whether the circuit court had authority to enter a new sentence outside of the term in which the original sentence was entered.
a. Double jeopardy as to re-indictment and conviction
¶7. Moore's plea bargain with the State entitled him to a reduced sentence on a guilty plea of armed robbery and a nolle prosequi on the kidnapping charge in exchange for his testimony against Amerson. Moore refused to testify, thereby breaching the plea agreement with the State. See United States v. Castaneda, 162 F.3d 832, 836 (5th Cir.1998) ("If the pleadings show no factual dispute, . . . the court may determine breach as a matter of law").[1] Moore contends that the State subjected him to double jeopardy and denied *1258 him due process of law when the State then re-indicted and convicted him outside the term of court at which the original armed robbery sentence was entered.
¶8. "[T]he Double Jeopardy Clause . . . does not relieve a defendant from the consequences of his voluntary choice." Ricketts v. Adamson, 483 U.S. 1, 11, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (quoting United States v. Scott, 437 U.S. 82, 99, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978)). In Ricketts, the defendant's plea agreement with the State included in its terms that the charges would be automatically reinstated upon the defendant's breach by a refusal to testify. Id. at 9, 107 S.Ct. 2680. Breach of that agreement returned the parties in that case to the status quo ante, so that in effect, the defendant had "no double jeopardy defense to waive." Id. at 10, 107 S.Ct. 2680.
¶9. A plea agreement is contractual in nature. Wright v. McAdory, 536 So.2d 897, 901 (Miss.1988). When a defendant breaches a plea agreement, the agreement is "terminated as if it never existed and the State of Mississippi retains all powers of prosecution. . . ." State v. Danley, 573 So.2d 691, 694 (Miss.1990) ("Danley II") (quoting Danley v. State, 540 So.2d 619, 621 (Miss.1988)). Moore's voluntary refusal to testify against Amerson constituted a material breach of the plea bargain. As a result of this breach, the parties were returned to the status quo ante, and Moore had no double jeopardy defense available concerning re-indictment and conviction on the charges. "[A]n agreement specifying that charges may be reinstated given certain circumstances is . . . equivalent to an agreement waiving a double jeopardy defense." Ricketts, 483 U.S. at 10, 107 S.Ct. 2680. The transcript of Moore's February 12, 2003 guilty plea hearing clearly shows that Moore was aware that the State would seek to invalidate his plea and reinstate the charges if he failed to testify truthfully against Amerson.
¶10. As to reinstatement of the kidnapping charge, it is fully within the State's authority to "re-indict an accused for the same offense after an order of nolle prosequi has been entered." State v. Shumpert, 723 So.2d 1162, 1165(¶13) (Miss.1998). We therefore find no double jeopardy violations as to the re-indictment and conviction on the kidnapping and armed robbery charges.
b. Authority of circuit court to vacate original plea and sentence on armed robbery count
¶11. Moore further contends that the action to vacate the plea and sentence on the armed robbery count was null and void, because it was filed outside the term of the court in which the sentence was originally entered. Moore cites us to Harrigill v. State, 403 So.2d 867, 868-69 (Miss. 1981), where the Mississippi Supreme Court stated that "once a case has been terminated and the term of court ends, a circuit court is powerless to alter or vacate its judgment." Furthermore, Moore argues that "a circuit court cannot rule on motions which are not pending at the end of the term of court when sentencing was imposed." Presley v. State, 792 So.2d 950, 954(¶19) (Miss.2001). Hence, Moore contends that because the motion to vacate the plea and sentence was not pending at the end of the term of court, the judgment of the circuit court vacating the armed robbery sentence is void and we should reinstate the February 12, 2003 sentence of fifteen years imprisonment and $1,000 fine.
¶12. As discussed above, Moore materially breached his plea bargain agreement. Moore obtained the benefit of a *1259 plea bargain based solely on his promise to testify truthfully against Amerson, his co-defendant. However, the question was not whether Moore testified to the approval of the prosecutors but was that he refused to testify at all. Indeed, Moore unequivocally and materially breached the plea bargain agreement when he failed to testify.
¶13. A breached plea bargain agreement is "terminated as if it never existed and the State of Mississippi retains all powers of prosecution." Danley II, 573 So.2d at 694; Danley v. State, 540 So.2d 619, 621 (Miss.1988) ("Danley I") (emphasis added). The supreme court has thoroughly discussed the law as it relates to a breach of a plea bargain agreement in Danley I and Danley II. Danley and the district attorney agreed to a plea bargain. Id. at 621. The terms of the plea bargain were similar to the plea colloquy here. Id. Danley agreed to testify truthfully and agreed that if he did not then the State could prosecute him fully. Id. The district attorney believed that Danley lied during his testimony and determined that he would prosecute Danley for murder instead of manslaughter. Id. The court held:
The United States Supreme Court has held that the process of plea bargaining is to be encouraged if properly administered. "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432-433 (1971). Santobello also stressed the requirement of fairness inplea negotiations. "When a plea bargain is made and a guilty plea entered thereon, the promises of the prosecutor are part of the inducement of the plea . . ." Gamble v. State, 95 Nev. 904, 604 P.2d 335, 337 (1979).
Therefore, the prosecution is held to "the most meticulous standards of both promise and performance," Correale v. United States, 479 F.2d 944, 947 (1st. Cir.1973), in an effort to ensure that the defendant's rights are scrupulously honored.
Id. at 622.
¶14. In Danley II, the court considered the possible preclusive effect of double jeopardy and held:
Notably, the United States Supreme Court recently decided a double jeopardy case which could be deemed dispositive of the case sub judice. See Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). Ricketts involved the 1976 assassination of a reporter for the Arizona Republic newspaper. A police investigation led to the arrest of John Harvey Adamson. Shortly after his trial for first-degree murder commenced, Adamson and the prosecutor struck a bargain. Pursuant to the bargain, Adamson would be allowed to plead guilty to a lesser offense in exchange for his "truthful" testimony against his accomplices. The bargain also provided that "[s]hould [Adamson] refuse to testify or should he at any time testify untruthfully . . . then this entire [bargain] is null and void and the original charge will be automatically reinstated." The trial court accepted the plea bargain, and Adamson pled guilty to the lesser offenses. Adamson then refused to testify against his accomplices and, as a consequence of the breach, the prosecutor reinstated the first-degree murder charge. Adamson appealed the reinstatement to the U.S. Supreme Court. The Supreme Court rejected Adamson's complaint and concluded that the Double Jeopardy Clause does not protect a defendant who seeks to benefit from the *1260 consequences of a voluntary breach of a plea bargain. 483 U.S. at 10-12, 107 S.Ct. at 2686, 97 L.Ed.2d at 12-13 (The defendant's "breach of the agreement would restore the parties to their original positions and he could be prosecuted for first-degree murder . . . and the Double Jeopardy Clause does not relieve him from the consequences of that choice.") (citing United States v. Scott, 437 U.S. 82, 98-99, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65, 79 (1978)).
Danley II, 573 So.2d at 694-95. In Danley II, the court concluded that the plea bargain should be "terminated as if it never existed and the State of Mississippi retains all powers of prosecution" requires that we hold that Moore may not escape his rightful sentence because the term of court had ended. Id. at 695.
¶15. Moore argues that the decisions in Harrigill and Presley require us to conclude that the judgment that vacated the guilty plea and sentence for armed robbery is void, because the motion was not pending at the end of the court term. We disagree.
¶16. In Harrigill, the supreme court did state that "once a case has been terminated and the term of court ends, a circuit court is powerless to alter or vacate its judgment." Harrigill, 403 So.2d at 868-69. However, the court also recognized that "[a] court does have inherent power to correct judgments obtained through fraud, accident or mistake." Id. at 869.
¶17. Harrigill was convicted of the crime of obtaining money under false pretenses. Miss.Code Ann. § 97-19-39 (Supp.2005). He was sentenced to serve three years and pay a $50,000 fine. Harrigill, 403 So.2d at 868. The supreme court affirmed his conviction. Harrigill v. State, 381 So.2d 619 (Miss.1980). Harrigill then filed, in the circuit court, a "Motion to Modify Original Confinement Order to Exclude Imprisonment Upon Basis of Criminal Fine." Harrigill, 403 So.2d at 868. He argued that the circuit court should change or alter his sentence to remove the fine as the basis for his continued incarceration, because he was financially unable to pay the fine. Id. He claimed that his inability to pay the fine prevented him from being released on parole. Id. The circuit court denied the motion. Id. The supreme court determined that his sentence could not be amended or modified by the trial court. Id.
¶18. The Harrigill court reasoned:
In Denton v. Maples, 394 So.2d 895 (Miss.1981), we announced what we thought was already manifest: once a case has been appealed from the circuit court to this Court, the circuit court loses jurisdiction to amend or modify its sentence. If the case is affirmed, the lower court is issued a mandate to perform purely ministerial acts in carrying out the original sentence. There is no authority in the circuit court, or indeed this Court, following the issuance of a mandate affirming the case, to modify a judgment and sentence theretofore imposed. In the absence of some statute authorizing such modification, and presently there is none, once a case has been terminated and the term of court ends, a circuit court is powerless to alter or vacate its judgment.
When a criminal case has been completed and the term of court ends, unless the circuit court has deferred sentence, or placed the defendant upon a suspended sentence and retained jurisdiction for this specific purpose as authorized by statute, the power of the circuit court to alter or amend its sentence is terminated. If the case is duly appealed to this Court, this Court has appellate jurisdiction to either affirm, reverse and remand, or reverse and render the *1261 judgment the lower court should have rendered. It is only when the case is remanded for a new trial that the circuit court is again invested with discretionary authority with reference to that particular case.
. . . .
This holding, of course, is without prejudice to any department of the Executive Branch of our State Government making whatever decision it deems appropriate and lawful in the case of the defendant, and also without prejudice to the defendant's asserting any statutory or constitutional right by original petition in an appropriate legal forum. A court does have inherent power to correct judgments obtained through fraud, accident or mistake, which is reviewable through a writ of error coram nobis. However, this is not such a case. See McNeeley v. Blain, 255 So.2d 923, 925 (Miss.1971); City of Starkville v. Thompson, 243 So.2d 54, 55 (Miss.1971); Corry v. Buddendorff, 98 Miss. 98, 54 So. 84 (1911).
Id. at 868-69 (emphasis added).
¶19. In Denton v. Maples, Circuit Court Judge Darwin M. Maples entered an order that suspended the sentence of Sue Denton. Denton v. Maples, 394 So.2d 895, 897 (Miss.1981). Denton was convicted of aggravated assault with a deadly weapon on January 27, 1976. Id. at 896. She was sentenced to serve eighteen years. Id. After post-trial motions, the conviction was appealed to the supreme court. Id. at 896-97. On August 10, 1977, the supreme court affirmed the conviction and sentence. Judge Maples's order came after the supreme court decided the appeal. Id. at 897. The supreme court determined that there was no authority for the circuit court to suspend a previously imposed sentence. Id. The sole issue was whether the circuit court could "alter," i.e. suspend, a sentence after the supreme court had decided the case. Id. The question of whether the circuit court could "vacate" a sentence was simply not addressed.
¶20. In Harrigill, the supreme court noted that "[a] court does have inherent power to correct judgments obtained through fraud, accident or mistake,. . . ." Harrigill, 403 So.2d at 869. In fact, one of the cases cited by the court in Harrigill held:
In conclusion, it should be noted that the circuit court has the inherent power to correct judgments obtained in that court through fraud, accident or mistake. Any court should have the authority and right to correct a judgment obtained through fraud which vitiates any contract, and in the case at bar the accident or mistake could have been rectified by the filing of a petition for writ of error coram nobis.
City of Starkville v. Thompson, 243 So.2d 54, 55 (Miss.1971).
¶21. Here, Moore's appeal considers this exact principle. Under his plea bargain agreement, Moore agreed to testify against Lee Amerson. At the hearing, the following exchange occurred:
Court: Now, Paragraph 7(a) of your petition has been checked, which states that you have reached a plea bargain agreement with the District Attorney's office. According to Paragraph 7(a), you will be sentenced to serve 15 years with the Mississippi Department of Corrections. Like I said earlier, that would be served day-to-day, without any type of early release consideration. You would be ordered to pay court costs in the amount of $247.50, and you would owe a $1,000 appearance bond fee. You have also requested and the court will allow you to participate in the alcohol and drug treatment program, the long program, while an inmate with MDOC. Count I of the indictment, *1262 which is the kidnaping count, that will be dismissed by separate order. Now is that your understanding of the full and complete plea bargain agreement that you have reached with the State in your case and your understanding of how it works?
Moore: Yes, Sir.
Court: Mr. Stephenson [defense counsel], is that your understanding?
Stephenson: Yes Sir.
Court: Mr. Angero, representing the State?
Angero: Yes, sir. And, obviously, with the way you see the petition there, we are expecting that he will give truthful testimony in relation to his co-defendant, if and when his case comes to trial.
Court: Do you understand that?
Moore: Yes, Sir.
. . . .
Angero: In other words, Judge, if he pleads guilty today, he gets his deal and goes and starts serving his time, and we call him back. That statement he has given under oath right here is attached and what he said in his [guilty] plea petition, when we call him back, we expect that this is what he is going to testify to. We expect that that is what he swears the truth is. If he should change his mind about that and if he should start to give what we consider to be perjured testimony, then we reserve the right to come back to you and ask that this court invalidate the plea and take him to trial.
Stephenson: Judge, I don't know whether they can really do it that way. They can get him for perjury, obviously.
Angero: Yes, we can. That's part of the plea bargain, Judge. It happens that way. That's the only way we can deal with it.
Court: Mr. Stephenson, is part of the plea bargain agreement that he testify truthfully in line with his statement?
Stephenson: Yes, sir.
Court: You understand that Mr. Moore?
Moore: Yes, sir.
Angero: Judge, to be perfectly honest with you, I don't expect that it will be a problem, because Mr. Moore told the police the truth when they asked him originally. I mean, when he cooperated with the police. I just wanted to make sure, you know, that something doesn't happen between now and the time we get Mr. Amerson to trial.
¶22. Under the authority of Danley I and II, Moore's plea bargain sentence was "terminated as if it never existed and the State of Mississippi retains all powers of prosecution," when he refused to testify, and the State acted properly. In addition, under Harrigill and Presley, we conclude that Moore committed a fraud, and the circuit court has the "inherent power to correct judgments obtained in that court through fraud." Accordingly, we find no merit to this issue.
II. Whether Moore was subjected to double jeopardy and denied due process of law through multiple punishments for the same crime when he was sentenced to criminal contempt for refusal to testify.
¶23. The circuit court sentenced Moore to criminal contempt for refusal to testify in Amerson's trial. Because his failure to testify constituted a material breach of the plea agreement, the State reinstated the kidnapping charge, for which Moore was subsequently convicted and sentenced to twenty-five years imprisonment. Moore contends that the kidnapping conviction and sentence constituted a second punishment for his refusal to testify, *1263 thus subjecting him to double jeopardy. To support this proposition, Moore cites Menna v. New York, 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), in which a defendant was sentenced to criminal contempt for a fixed thirty day period for a refusal to testify before a grand jury, and was later re-indicted for refusal to testify as to the same matter. In Menna, the United States Supreme Court held that multiple sentences for the defendant's refusal to testify subjected the defendant to double jeopardy. Id. Such is clearly not the case here. This case is distinguishable from Menna in that, in Menna, the defendant was punished twice for refusal to testify, whereas here, Moore was punished once for refusal to testify against Amerson and once for the separate and distinct crime of kidnapping the Morgans. We therefore find this argument to be completely without merit.
III. Whether Moore was subjected to double jeopardy and denied due process of law through being convicted of both kidnapping and armed robbery when the charges arose from the same incident.
¶24. Moore next contends that the armed robbery factual proof leaves no facts upon which kidnapping may be proven. Under Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), "the test to be applied to determine whether there are two [distinct statutory] offenses or only one, is whether each provision requires proof of an additional fact which the other does not." "If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." Iannelli v. United States, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). "Temporal proximity does not generate a judicial union of separate and distinct criminal acts, nor does the presence of a common nucleus of operative facts." Moore v. State, 617 So.2d 272, 274 (Miss.1993) (citations omitted).
¶25. Mississippi Code Annotated § 97-3-53 (Rev.2002) defines kidnapping, in pertinent part, as occurring when "[a]ny person who . . . without lawful authority forcibly seize[s] and confine[s] any other person, or . . . inveigle[s] or kidnap[s] any other person with intent to cause such person to be secretly confined or imprisoned against his or her will."
¶26. Armed robbery ("robbery by use of a deadly weapon") occurs when a person "feloniously take[s] from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by exhibition of a deadly weapon." Miss. Code Ann. § 97-3-79 (Rev.2002).
¶27. These offenses are clearly separate and distinct, with each requiring proof of additional facts the other does not. Kidnapping, for example, requires proof of "intent to cause such person to be secretly confined or imprisoned against their will," whereas armed robbery does not. Armed robbery requires the taking of personal property of another; kidnapping does not. These crimes are separate and distinct regardless of their temporal overlap or their arising from a common nucleus of operative facts. Moore's argument here is without merit.
IV. Whether Moore should be granted a new trial because of a jury instruction that varied from the indictment and allowed instructions involving accomplice liability and whether the instruction contained an assumption of fact that the crime was committed.
¶28. "Errors based on the granting of an instruction will not be considered *1264 on appeal unless specific objections stating the grounds are made in trial court." Oates v. State, 421 So.2d 1025, 1030 (Miss.1982). Moore did not object to the jury instructions on these grounds at trial, and is thus procedurally barred from raising the issue on appeal.
V. Whether Moore was denied fundamental fairness and due process of law by reason of prosecutorial vindictiveness.
¶29. Moore contends that the circuit court vindictively sentenced him to double the sentence he would have received under his plea agreement because of his refusal to testify against Amerson and Amerson's subsequent acquittal. Moore claims that the purpose of the trial was to expose him to a jury sentence of life imprisonment and that when the jury did not sentence him to life, the sentencing evidence and argument was that he should serve the time Amerson would have served if not acquitted. Moore points to the following statements of the assistant district attorney during the sentencing phase of the trial as evincing an improperly vindictive motive: "Mr. Moore took it upon himself to see that [Amerson] wasn't punished. And because of that, Judge, if he wants to take full responsibility, that's fine. But we expect that he will get full responsibility for it because of that action."
¶30. "[F]or an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is `patently unconstitutional.'" Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 32-33 n. 20, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)). "But in the `give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." Id. "[W]hen a greater sentence is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge." Alabama v. Smith, 490 U.S. 794, 801, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (emphasis added). "Even when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial." Id. Where there is a "reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority," there is a presumption of prosecutorial vindictiveness. Id. at 799, 109 S.Ct. 2201. However, when no such likelihood exists, it is the defendant's burden to prove actual vindictiveness. Id. at 799-800, 109 S.Ct. 2201; see also United States v. Molina-Iguado, 894 F.2d 1452, 1453-54 (5th Cir.1990) (holding that defendant has burden of proof by preponderance of evidence).
¶31. There is no reasonable likelihood of vindictiveness on the part of the prosecutor or sentencing judge apparent in this case, and thus no presumption of vindictiveness is created. The statements by the assistant district attorney which Moore points to as evincing an improperly vindictive motive merely note the consequences of Moore's breach of the plea agreement by refusing to testify against Amerson. Moore was free to accept the plea bargain and testify against Amerson according to its terms, and thus receive lesser punishment for the crimes with which he was charged. Instead, Moore chose to reject compliance with the plea bargain by refusing to testify against Amerson. It is the opinion of this Court that the statements by the assistant district attorney merely note the consequences of Moore's breach *1265 and evince no improperly vindictive motive. We therefore find that Moore failed to meet his burden of proof and that this argument is without merit.
VI. Whether Moore was denied his right to silence as a result of the State's statements during closing argument.
¶32. Moore argues that statements by the assistant district attorney during closing argument amount to an indirect comment on Moore's right to remain silent by not testifying during his trial. Because Moore failed to object to the statements at trial, he is procedurally barred from asserting such grounds on appeal. See Thorson v. State, 895 So.2d 85, 112 (¶64) (Miss.2004).
VII. Whether Moore was denied effective assistance of counsel at trial.
¶33. Moore contends that the public defender failed to provide meaningful representation at trial. To support this argument, Moore points to his trial counsel's failure to object to leading questions, failure to object to jury instructions containing assumptions of fact, failure to effectively cross-examine, failure to adequately investigate his case, failure to call witnesses, and numerous other grounds.
¶34. The merits of an ineffective assistance of counsel claim on direct appeal should be addressed only when "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make a finding without consideration of the findings of fact of the trial judge." Colenburg v. State, 735 So.2d 1099, 1101(¶5) (Miss.Ct.App. 1999). If this Court does not reverse on other grounds and is unable to conclude that the defendant received ineffective assistance of counsel, it should affirm "without prejudice to the defendant's right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings." Id. Review on direct appeal of an ineffective assistance of counsel claim is confined strictly to the record. Id. at 1102(¶6). The Mississippi Supreme Court has adopted the test for ineffective assistance of counsel announced by the United States Supreme Court, in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Alexander v. State, 605 So.2d 1170, 1173 (Miss.1992). The Strickland test requires the defendant to prove that, considering the totality of the circumstances, (1) trial counsel's performance was deficient, and (2) defendant was prejudiced as a result. Colenburg, 735 So.2d at 1103(¶9). "The defendant must show that but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court." Id. "A strong but rebuttable presumption, that counsel's performance falls within the wide range of reasonable professional assistance, exists." Id. "Scrutiny of counsel's performance by this Court must be deferential." Id.; see also Ahmad v. State, 603 So.2d 843, 848 (Miss.1992) (discussing scope of review on appeal for counsel's performance).
¶35. We find that Moore's trial counsel was not ineffective based on the record in this case. Any errors Moore's trial counsel may have committed in this case were not prejudicial to Moore's defense so as to create a reasonable probability of a different outcome in the absence of such errors. We therefore find this argument to be without merit.
¶36. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF COUNT I KIDNAPPING AND THE SENTENCE OF TWENTY-FIVE YEARS, AND COUNT II ARMED ROBBERY *1266 AND THE SENTENCE OF THIRTY YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, COUNTS I AND II TO RUN CONCURRENTLY TO EACH OTHER, AND ORDER TO PAY RESTITUTION OF $8,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
LEE AND MYERS, P.JJ., CHANDLER, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. KING, C.J., SOUTHWICK AND ROBERTS, JJ., NOT PARTICIPATING.
NOTES
[1] Moore also contends on appeal that his testimony under the plea bargain was made impossible or impracticable because of threats by Amerson against his life and family, but there is nothing in the record to support this proposition.